No. 97-096

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 221

STATE OF MONTANA,

Plaintiff and Respondent,

v.

RONALD A. CLARK,

Defendant and Appellant.

APPEAL FROM: District Court of the Eighteenth Judicial District,

In and for the County of Gallatin,

The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Daniel P. Buckley (argued); Berg, Lilly, Andriolo and

Tollefson, P.C.; Bozeman, Montana; and

Brock Albin (argued); Kommers & Roth; Bozeman, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Carol Schmidt (argued),

Assistant Attorney General; Helena, Montana

Marty Lambert, Gallatin County Attorney; Jane Mersen, Deputy

County Attorney; Bozeman, Montana


For Amici Curiae:

William F. Hooks; Montana Appellate Defender Office; Helena, Montana

(for State Bar of Montana Criminal Defense Section)

James J. Shea; Bricker, Zakovics, Querin, Thompson & Ritchey, P.C.;

Missoula, Montana (for Montana Association of Criminal Defense Lawyers)


Heard: April 27, 1998

Submitted: April 30, 1998

Decided: September 3, 1998

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

**¶1 Ronald Clark appeals from the judgment and sentence entered by the Eighteenth Judicial District Court, Gallatin County, on his convictions for criminal possession of**

dangerous drugs and drug paraphernalia, driving under the influence of alcohol, failure to remain at the scene of an accident, and failure of duty upon striking an unattended vehicle. For the reasons stated below, we reverse in part, affirm in part, and remand to the District Court.

¶2 Clark presents the following issues on appeal:

¶3 1. Is that portion of Rule 803(8), M.R.Evid., which governs the introduction of written reports from the Montana state crime laboratory unconstitutional?

¶4 2. Did the District Court err in denying Clark's request for a psychological evaluation pursuant to § 46-14-202, MCA?

¶5 3. Did the District Court err in denying Clark's motion for a mistrial made on the grounds that the court erred in permitting a witness for the State to testify as to other crimes, wrongs, or acts by the defendant?

¶6 4. Did the District Court err in denying Clark's motions to set aside the verdict and to dismiss Count 1 of the amended information made on the grounds that the court had failed to arraign Clark on the charges contained within the amended information filed by the State?

## FACTUAL AND PROCEDURAL BACKGROUND

¶7 On March 26, 1996, Bozeman police arrested Clark in connection with two automobile accidents which had occurred on the city's streets that morning. On April 3, 1996, the State filed an information charging Clark with two felony counts of criminal possession of dangerous drugs, in violation of § 45-9-102, MCA. The State also charged Clark with misdemeanor counts of criminal possession of drug paraphernalia, in violation of § 45-10-103, MCA, second offense DUI, in violation of § 61-8-401, MCA, failure to remain at the scene of an accident, in violation of § 61-7-104, MCA, failure of duty upon striking unattended vehicle, in violation of § 61-7-106, MCA, and failure to carry proof of insurance, in violation of § 61-6-302, MCA. Clark appeared with counsel at his April 17, 1996, arraignment and pled not guilty to all charges.

¶8 On October 21, 1996, the State filed a motion for leave to file an amended

information "to consolidate the charges in counts 1 and 2 and to change the name of the dangerous drug from Methamphetamine to Amphetamine." The court heard oral argument on the State's motion and advised the State to file an amended affidavit of probable cause. The State filed its amended affidavit on October 22, 1996, and the court issued an order the following day granting the State permission to file an amended information. The State accordingly filed an amended information on October 23, 1996, consolidating Counts 1 and 2 of the original information, and charging Clark with criminal possession of amphetamine.

¶9 On October 21, 1996, the same day it filed a motion for leave to amend its information, the State also filed a notice of its intent to offer written crime lab reports in evidence pursuant to Rule 803(8), M.R.Evid. Clark filed a written response, objecting to "the admission of the reports without the proper foundation being laid by the author of the report." Clark argued that the admission of the report in the absence of its author would violate his "right to conduct a cross-examination." On November 21, 1996, the court held a hearing on Clark's various pretrial motions, and ordered from the bench that the State could introduce the crime lab reports without making the author available. The court explained that, pursuant to Rule 803 (8), M.R.Evid., if Clark wished to question the author of the crime lab reports, he would have to subpoena her as a witness.

¶10 Clark was tried before a jury on November 26 and 27, 1996. The jury returned its verdict on November 27, 1996, convicting Clark of criminal possession of dangerous drugs, criminal possession of drug paraphernalia, DUI, failure to remain at the scene of an accident, and failure of duty upon striking unattended vehicle.

¶11 On December 30, 1996, Clark filed a post-trial motion to set aside the verdict on Count 1 of the amended information, and dismiss that charge with prejudice. The court denied Clark's motion on January 6, 1997, and sentenced him the following day. The court sentenced the defendant to five years in prison, with all but thirty-three days suspended, on his conviction for Count 1, criminal possession of dangerous drugs. Clark received a concurrent sentence of six months in jail, with all but thirty days suspended, on his conviction for Count 2, criminal possession of drug paraphernalia. As to Counts 3, 4, and 5, the court ordered that Clark be committed to the county jail for a period of thirty days for each offense, with those sentences to be served concurrently with his sentence under Count 1. Clark filed his notice of appeal on January 7, 1997.

## ISSUE 1

**¶12 Is that portion of Rule 803(8), M.R.Evid., which governs the introduction of written reports from the Montana state crime laboratory unconstitutional?**

**¶13 Rule 803(8), M.R.Evid., provides as follows:**

> To the extent not otherwise provided in this paragraph, records, reports, statements, or data compilations in any form of a public office or agency setting forth its regularly conducted and regularly recorded activities, or matters observed pursuant to duty imposed by law and as to which there was a duty to report, or factual findings resulting from an investigation made pursuant to authority granted by law. The following are not within this exception to the hearsay rule: (i) investigative reports by police and other law enforcement personnel; (ii) investigative reports prepared by or for a government, a public office, or an agency when offered by it in a case in which it is a party; (iii) factual findings offered by the government in criminal cases; (iv) factual findings resulting from special investigation of a particular complaint, case, or incident; and (v) any matter as to which the sources of information or other circumstances indicate lack of trustworthiness. However, written reports from the Montana state crime laboratory are within this exception to the hearsay rule when the state has notified the court and opposing parties in writing of its intention to offer such report or reports in evidence at trial in sufficient time for the party not offering the report or reports (1) to obtain the depositions before trial of the person or persons responsible for compiling such reports, or (2) to subpoena the attendance of said persons at trial.

**¶14 As noted above, it was on October 21, 1996, that the State first filed notice of its intent to offer written crime lab reports into evidence pursuant to Rule 803(8), M.R. Evid. The State indicated it intended to offer "the report of forensic scientist Annalivia Harris, relating to the substances taken from the defendant on March 26, 1996, in evidence during the trial of this action." Clark filed a written response on November 13, 1996, in which he objected "to the admission of the reports without the proper foundation being laid by the author of the report." Clark additionally objected to the admission of the report in the absence of its author on the grounds that such a procedure violated his right to conduct a cross-examination. In reply, the**

State urged the District Court to apply Rule 803(8), M.R.Evid., and admit the crime lab report without requiring Harris to testify. The State argued "[t]here will be no prejudice to the defense if Ms. Harris does not testify," because all she would "say is contained in her report."

¶15 On November 14, 1996, the District Court held a hearing regarding the State's proposed use of the crime lab report prepared by Harris. The State argued the report was admissible pursuant to Rule 803(8), M.R.Evid., and asked that "the Court require the defendant to subpoena Ms. Harris if [he] want[s] her here." Having heard argument by the parties, the court deferred its ruling on the admissibility of the crime lab report. On November 21, 1996, during a hearing on various pretrial motions, the court ruled from the bench that "the State can introduce the report." With respect to Harris's presence at trial, the court instructed defense counsel with the following in accordance with Rule 803(8): "If you want that person here, Mr. Buckley, you subpoena her."

¶16 On appeal, Clark argues that that portion of Rule 803(8), M.R.Evid., which governs the introduction of Montana state crime lab reports is unconstitutional, and asserts the District Court thus erred in permitting the State to introduce the crime lab report without calling its author as a witness. More specifically, Clark first argues that portion of the rule which required him to subpoena Harris as a witness in the event he wished to cross-examine her, impermissibly shifted the burden of proof from the State to the defendant in violation of both the Montana and United States Constitutions. Clark next argues that, because the rule authorized the State to introduce Harris's crime lab report without calling her as a witness, it violated his right to confront and cross-examine his accusers as guaranteed by the Montana and United States Constitutions.

¶17 We have repeatedly recognized that "a legislative enactment 'is presumed to be constitutional and will be upheld on review except when proven to be unconstitutional beyond a reasonable doubt.'" *Zempel v. Uninsured Employers' Fund* (1997), 282 Mont. 424, 428, 938 P.2d 658, 661 (quoting *City of Billings v. Laedeke* (1991), 247 Mont. 151, 154, 805 P.2d 1348, 1349).

A. Confrontation Clause

¶18 We turn first to Clark's assertion that the provisions of Rule 803(8), M.R.Evid.,

which govern the introduction of state crime lab reports, violate the Confrontation Clause of the Montana Constitution. Clark specifically asserts that "[w]hen the District Court admitted the crime lab report without requiring the presence of the technician who wrote the report, it violated [his] right to confront and cross-examine his accuser." Clark argues admission of the report without the presence of its author denied him the opportunity to cross-examine the technician, to observe the witness at trial, to cast doubt on the accuracy of the report, and to question the chain of custody.

¶19 The State, in contrast, argues Rule 803(8), M.R.Evid., "does not violate a defendant's right to confront and cross-examine his accusers as protected by the Montana Constitution." In support of its argument, the State points to a number of decisions in which various federal courts have held that the admission of certain written laboratory reports, without the presence of the author at trial, does not violate the Confrontation Clause of the United States Constitution. For example, the State relies in part upon the case of *United States v. Roulette* (8th Cir. 1996), 75 F.3d 418, 422, *cert. denied, Roulette v. United States* (1996), 117 S. Ct. 147, 136 L. Ed. 2d 93, in which the Eighth Circuit Court of Appeals held that, pursuant to the business records exception to the hearsay rule, the government could introduce laboratory reports identifying the substance involved in a drug case without producing testimony by the person who conducted the tests or proof of her unavailability. The State urges this Court to follow the foregoing line of federal court cases, and hold that that portion of Rule 803(8), M.R.Evid., which governs the introduction of Montana state crime lab reports complies with the requirements of Montana's Confrontation Clause.

¶20 It is well-established, however, that we may interpret a provision of the Montana Constitution to afford greater protection than that afforded by its federal counterpart. *Pfost v. State* (1985), 219 Mont. 206, 215, 713 P.2d 495, 500-01, *overruled on other grounds by Meech v. Hillhaven West, Inc.* (1989), 238 Mont. 21, 26, 776 P.2d 488, 491. For example, in *State v. Stever* (1987), 225 Mont. 336, 344, 732 P.2d 853, 858, we recognized that we were not bound by a United States Supreme Court decision interpreting the Sixth Amendment Confrontation Clause in the context of hearsay evidence "as we may interpret our state constitution to guarantee greater rights than those guaranteed by the federal constitution."

¶21 Article II, Section 24, of the Montana Constitution, the counterpart to the

**Confrontation Clause of the United States Constitution, provides as follows:**

> In all criminal prosecutions the accused shall have the right to appear and defend in person and by counsel; to demand the nature and cause of the accusation; to meet the witnesses against him face to face; to have process to compel the attendance of witnesses in his behalf, and a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed, subject to the right of the state to have a change of venue for any of the causes for which the defendant may obtain the same.

**¶22 Unlike its federal counterpart, the text of Montana's Confrontation Clause specifically guarantees the accused's right "to meet the witnesses against him face to face." As we noted in *State v. Young* (1991), 249 Mont. 257, 260, 815 P.2d 590, 592, "[t]he 1972 Montana Constitution and subsequent cases analyzing the Confrontation Clause have made it abundantly clear that full cross-examination is a critical aspect of the right of confrontation." Moreover, we have recognized that the rights contained in the Declaration of Rights, which include the rights guaranteed to an accused person in a criminal prosecution, are fundamental rights. *Wadsworth v. State* (1996), 275 Mont. 287, 299, 911 P.2d 1165, 1171-72.**

**¶23 Cross-examination is the hallmark of our system of justice because it produces truth. Such things as the demeanor of a witness, his or her body language, and a witness's hesitancy in giving testimony, often communicate as much to the fact-finder as the spoken words. All of this is lost in a written deposition.**

**¶24 In this case, the chemical analysis of the drugs was a critical component of the State's case. The experience, background, and training of the technician, and the method and manner of tests conducted, are all matters which the defendant is entitled to explore through cross-examination in the presence of the fact-finder. The framers of the Montana Constitution appreciated these safeguards and saw fit to distinguish our Confrontation Clause from the United States Constitution by insuring a criminal defendant the right "to meet the witnesses against him face to face." Mont. Const. art. II, § 24.**

**¶25 In light of the fact that Montana's Constitution specifically guarantees a criminal defendant the right to a face-to-face confrontation with his or her accusers, and in light of the critical importance of an accused's fundamental right of confrontation,**

including the right of cross-examination, we conclude that portion of Rule 803(8), M.R.Evid., which governs the introduction of Montana state crime lab reports violates Article II, Section 24, of the Montana Constitution.

## B. Due Process

¶26 Clark next argues that the segment of Rule 803(8), M.R.Evid., which required him to subpoena Harris as a witness in the event he wished to cross-examine her, impermissibly shifted the burden of proof, including the burden of production and persuasion, to him in violation of both the Montana and United States Constitutions. More specifically, Clark argues that portion of the rule which required him to subpoena the author of the crime lab report in the event he wished to confront and cross-examine her, impermissibly shifted the burden of proof away from the State by "allowing the State to prove an integral part of [its] case against the defendant without more than a crime lab report." Clark thus argues the requirement that he subpoena the technician in the event he wished to cross-examine her violated the due process guarantees of Article II, Section 17, of the Montana Constitution, and the Fourteenth Amendment to the United States Constitution.

¶27 The State, in contrast, argues the fact that Rule 803(8), M.R.Evid., permitted Clark to subpoena Harris in the event he wished to cross-examine her in no way shifted the burden of proof. The State argues that Rule 803(8) does not allow the State or the jury to presume any of the elements of the crime charged, but "is simply another hearsay exception the courts have allowed because it is the type of evidence that bears an adequate indicia of reliability and trustworthiness." The State asserts that it always bore the burden of proving "beyond a reasonable doubt all the elements of the crime," and asserts the "admission of evidence under a hearsay exception does not alter that fact."

¶28 Moreover, the State effectively argues that portion of Rule 803(8), M.R.Evid., which afforded Clark the opportunity to subpoena the author of the crime lab report actually guaranteed Clark's constitutionally protected right of confrontation. For example, the State asserts that where, as it alleges is the case here, the utility of producing a witness is remote, "the opportunity for effective cross-examination is satisfied where the defendant himself had the opportunity to call the declarant as a witness." *See, e.g., Reardon v. Manson* (2d Cir. 1986), 806 F.2d 39, 42, *cert. denied, Reardon v. Lopes* (1987), 481 U.S. 1020, 107 S. Ct. 1903, 95 L. Ed. 2d 509 (recognizing

that "in those borderline cases where the likely utility of producing the witness is remote, the Sixth Amendment's guarantee of an opportunity for effective cross-examination is satisfied where the defendant himself had the opportunity to call the declarant as a witness.") The State argues that, "if Clark investigated and had evidence that the personnel at the Montana State Crime Laboratory were careless in their procedures, then Clark could have, as part of his defense, subpoenaed the technician and anyone else from the crime laboratory that he felt necessary to support his argument." Because Clark could have chosen to call Harris as a witness, the State argues the opportunity for effective cross-examination was satisfied.

¶29 The due process guarantee of the Montana Constitution, embodied in Article II, Section 17, makes it the State's duty in a criminal prosecution to prove beyond a reasonable doubt every element of the crime charged. *State v. Korell* (1984), 213 Mont. 316, 330, 690 P.2d 992, 1000 (citing *In re Winship* (1970), 397 U.S. 358, 364, 90 S. Ct. 1068, 1073, 25 L. Ed. 2d 368, 375). Pursuant to Rule 803(8), M.R.Evid., however, the State in this case was not required to present the technician who prepared the state crime lab report as a witness in its case-in-chief, and was not required to subject her to cross-examination or confrontation. Instead, it was Clark who bore the burden of subpoenaing the State's witness in order to present a full defense and enjoy his constitutionally protected rights under the Confrontation Clause. Contrary to the State's argument, the fact that Clark could have subpoenaed the State's witness if he had so chosen does not remedy the Rule's constitutional deficits. Rather, the Rule effectively required Clark to subpoena and produce the State's expert in order to rightfully take advantage of the protection afforded him under the Confrontation Clause. In reality, the defendant is compelled to produce evidence during his case-in-chief, which in many instances will be incriminating, should he choose to test the State's case. Such a result is impermissible in light of the due process guarantees of Article II, Section 17, of the Montana Constitution.

¶30 Based on the foregoing, we hold that that portion of Rule 803(8), M.R.Evid., which governs the introduction of Montana state crime lab reports, not only violates the Confrontation Clause of the Montana Constitution, but also violates the due process guarantees embodied in Article II, Section 17. Having so held, we need not address Clark's argument that the rule similarly violates the Confrontation Clause and due process guarantees of the United States Constitution.

ISSUE 2

¶31 Did the District Court err in denying Clark's request for a psychological evaluation pursuant to § 46-14-202, MCA?

¶32 Just prior to the start of trial on November 26, 1996, Clark asked for a continuance on the grounds that his mother's recent hospitalization rendered him unable to provide effective assistance for his defense. The court denied Clark's motion from the bench, and the trial commenced as scheduled.

¶33 During the second day of trial, defense counsel asked that the court grant Clark the opportunity to undergo a psychological evaluation to determine whether he was capable of proceeding with the trial and providing assistance in his defense. Again referring to Clark's ailing mother, defense counsel explained that his client was "under an extreme amount of stress and pressure," and noted that "[t]he past day and a half have taken a toll on my client." Clark's attorney asked that the court grant his client "an opportunity to contact his psychologist so that the psychologist can render an opinion as to whether Mr. Clark can proceed in this trial and . . . provide assistance in his defense." The court denied Clark's motion without discussion, and the trial continued. On appeal, Clark argues the District Court erred in denying his request for a psychological evaluation to determine his fitness to proceed with his trial.

¶34 Having already determined that Clark is entitled to a new trial on the grounds that that portion of Rule 803(8), M.R.Evid., which governs the introduction of Montana state crime lab reports is unconstitutional, we need not address Clark's argument that the court erred in denying his request for a psychological evaluation.

ISSUE 3

¶35 Did the District Court err in denying Clark's motion for a mistrial made on the grounds that the court erred in permitting a witness for the State to testify as to other crimes, wrongs, or acts by the defendant?

¶36 We review a district court's ruling on a motion for a mistrial to determine whether the court abused its discretion. *State v. Partin* (Mont. 1997), 951 P.2d 1002, 1005, 54 St. Rep. 1474, 1476.

¶37 Clark argues the District Court improperly permitted Officer Tim Little, a

witness for the State, to testify as to prior crimes, wrongs, or acts, under Rule 404(b), M.R.Evid., despite the State's failure to abide by the notice requirements of *State v. Just* (1979), 184 Mont. 262, 274, 602 P.2d 957, 963-64. Clark contends the District Court erred in denying his subsequent motion for a mistrial which he made based upon the admission of what he characterizes as evidence of other crimes, wrongs, or acts.

¶38 Clark asserts it was during the following exchange that the State improperly elicited testimony from Officer Little regarding other crimes, wrongs, or acts:

> County Attorney: Okay. When I asked you earlier about the defendant's -- your observation or your opinion as to his state of intoxication; what did you base that on?
>
> Officer Little: I had known him before and --
>
> Defense Counsel: Your Honor, I'm going to object. This is getting into Rule 404.
>
> The Court: Okay. Yeah. Do you want to rephrase the question?
>
> County Attorney: No, but I'd like to respond to the objection, possibly outside the presence --
>
> The Court: No. No. The objection is sustained.
>
> County Attorney: Then I'll rephrase it, if I may. Have you seen the defendant not intoxicated?
>
> Officer Little: Yes, I have.
>
> County Attorney: And what is your opinion of his state that day?
>
> Officer Little: He was intoxicated.

¶39 Clark later moved for a mistrial, arguing Officer Little's testimony suggested to the jury that he had seen Clark intoxicated on prior occasions, and was an improper reference to "Mr. Clark's previous run-ins with the police while he was intoxicated."

Clark contends that Officer Little's testimony constituted improper evidence of prior crimes, wrongs, or acts by the defendant, and argues the court thus erred in denying his subsequent motion for a mistrial.

¶40 In response, the State argues it was merely "eliciting a lay opinion from Officer Little as to whether Clark was intoxicated on" the day of his arrest. The State asserts it "was establishing a foundation which would allow Officer Little to give his opinion as to his perception of Clark" on the day of his arrest, and argues that "[n]othing in the cited testimony is evidence of any other crimes, wrongs or acts."

¶41 We agree. We conclude that the disputed portion of Officer Little's testimony does not constitute evidence of other crimes, wrongs, or acts pursuant to Rule 404(b), M.R.Evid. Officer Little simply explained that he had previously seen Clark when Clark was not intoxicated. Officer Little made no mention of the circumstances surrounding his prior contact with Clark, and simply made no mention of any other crimes, wrongs, or acts as contemplated by Rule 404(b), M.R.Evid. Based on the foregoing, we hold the District Court did not abuse its discretion in denying Clark's motion for a mistrial.

## ISSUE 4

¶42 Did the District Court err in denying Clark's motions to set aside the verdict and to dismiss Count 1 of the amended information made on the grounds that the court had failed to arraign Clark on the charges contained within the amended information filed by the State?

¶43 On April 3, 1996, the State filed the original information in this case, charging Clark with, among other offenses, two counts of possession of dangerous drugs, methamphetamine, in violation of § 45-9-102, MCA. On October 21, 1996, the State filed a motion to amend the information to consolidate the two counts of possession of dangerous drugs and to change the drug identified in the information from methamphetamine to amphetamine. The State presented its motion to the District Court on October 22, 1996, and Clark objected on the grounds that "there is insufficient probable cause to allow the amendment to go forth at this time." The court advised the State to file an amended affidavit of probable cause, which it did the following day. The court reviewed the amended affidavit, and on October 23, 1996, issued an order granting the State leave to file its amended information. The

State filed its amended information that day, thereby charging Clark with criminal possession of amphetamine. Clark was never arraigned on the amended information. He was tried on November 26 and 27, 1996, and found guilty of Count 1 of the amended information, criminal possession of amphetamine.

¶44 On December 30, 1996, Clark filed a motion to set aside the jury verdict on Count 1 of the amended information, and to dismiss Count 1 of the amended information on the grounds that the court had erred in failing to arraign him on the amended information. The court denied Clark's motion in an order dated January 6, 1997. The court determined that, because "the Amended Information was merely a change in form," it was not required to conduct another arraignment. Moreover, the court concluded, "[e]ven if it was a change in substance, the defendant waived this objection by standing trial on the amended information without objection."

¶45 On appeal, Clark argues that the State substantively amended the original information when it decided to charge him with criminal possession of amphetamine, rather than methamphetamine. More specifically, Clark asserts the fact that "[t]he State was required to prove possession of methamphetamine under the original Information but was required to prove possession of amphetamine under the Amended Information," demonstrates that an element of the crime charged is different, and that the amendment was a substantive one. Clark also argues "the State was required to prove a different matter under the two Informations," because it "was required to prove that the substance was methamphetamine under the original Information but was required to prove the substance was amphetamine under the Amended Information." Because the amendment to the information was one of substance, Clark alleges, the court was required to arraign him on the amended information, and its failure to do so warranted reversal of his conviction for criminal possession of amphetamine.

¶46 The State, in contrast, asserts the amendment to the original information in this case was one of form only and did not alter the elements of the crimes charged. Because the amendment to the original information "was one of form and not of substance," the State argues, the District Court "did not err by not arraigning Clark on the amended information," and did not err in denying his motion to set aside the verdict and dismiss Count 1 of the amended information.

¶47 A district court's grant or denial of a motion to dismiss in a criminal case is a

question of law which we review *de novo*. *State v. Brander* (1996), 280 Mont. 148, 151, 930 P.2d 31, 33.

¶48 Pursuant to § 46-11-205, MCA, if the district court grants the State leave to amend the information "in matters of substance," then "the defendant must be arraigned on the amended information without unreasonable delay and must be given a reasonable period of time to prepare for trial on the amended information." Section 46-11-205(1) and (2), MCA. Section 46-11-205(3), MCA, provides that:

> The court may permit an information to be amended as to form at any time before a verdict or finding is issued if no additional or different offense is charged and if the substantial rights of the defendant are not prejudiced.

¶49 We have held "that an amendment is one of form and not substance when the same crimes are charged, the elements of the crimes remain the same, the required proof remains the same, and the defendant is informed of the charges against him." *State v. Sor-Lokken* (1991), 247 Mont. 343, 349, 805 P.2d 1367, 1371.

¶50 In the present case, the State originally charged Clark with two counts of criminal possession of dangerous drugs, felonies, in violation of § 45-9-102(1), MCA. Count 1 charged that Clark, on or about March 26, 1996, possessed methamphetamine, a dangerous drug as defined in § 50-32-101, MCA. Count 2 charged Clark with possessing methamphetamine on or about March 27, 1996, in violation of § 45-9-102(1), MCA. In its amended information, the State merely consolidated Counts 1 and 2, and charged Clark with the possession of amphetamine rather than methamphetamine.

¶51 Section 45-9-102(1), MCA, the statute pursuant to which Clark was charged in both the original and amended information, provides that "[a] person commits the offense of criminal possession of dangerous drugs if he possesses any dangerous drug, as defined in 50-32-101." Section 50-32-101(6), MCA, defines a "dangerous drugs" as "a drug, substance, or immediate precursor in Schedules I through V set forth in part 2." Section 50-32-224(3)(a) and (c), MCA, lists both methamphetamine and amphetamine as Schedule II drugs.

¶52 We conclude that the amendment in the present case was one of form only. Although the State altered the information to charge Clark with criminal possession

**of amphetamine rather than methamphetamine, the criminal offense and the elements which the State was required to prove remained the same. To convict Clark of criminal possession of a dangerous drug, the State bore the burden of proving only that Clark possessed a dangerous drug, as defined by § 50-32-101, MCA. Both amphetamine and methamphetamine qualify as dangerous drugs pursuant to § 50-32-101, MCA. The amendment in the present case was one of form and not substance because the crime charged remained the same, the elements of the crime remained the same, as did the required proof. Based on the foregoing, we hold the District Court did not err in denying Clark's motion to dismiss and set aside the jury verdict on Count 1 of the amended information.**

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

Justice W. William Leaphart, specially concurring.

¶53 I concur with the Court's resolution of issues 2, 3 and 4. As to issue 1, I agree with the Court's conclusion that Rule 803(8), M.R.Evid., violates the Confrontation Clause of the Montana Constitution and that Clark's conviction should be reversed. Accordingly, I would not reach the question of whether Rule 803(8) violates the Due Process Clause.

/S/ W. WILLIAM LEAPHART

Justice William E. Hunt, Sr., concurring in part and dissenting in part.

¶54 I concur with issues one, two and three of the majority opinion.

¶55 I dissent from issue four of the majority opinion which holds that the District Court did not err when it refused to set aside the verdict and dismiss count 1 of the amended information on the grounds that the court failed to arraign Clark on the charges contained within the amended information.

No

¶56 The crux of the issue is whether the amendment to the original information was only one of form or whether it was one of substance. If the change was one of substance, then the District Court was required to arraign the defendant on the amended information. Section 46-11-205(2), MCA. I would hold that the amendment was one of substance.

¶57 As the majority points out, the test for determining whether the amendment is one of form or substance was set forth in Sor-Lokken (1991), 247 Mont. at 349, 805 P.2d at 1371. Pursuant to that test, an amendment is one of form only if:

(1) The same crimes are charged;

(2) The elements of the crimes remain the same;

(3) The required proof remains the same; and

(4) The defendant is informed of the charges against him.

¶58 In this case the required proof changed when the information was amended. The prosecution was required to prove that Clark possessed a "dangerous drug" as defined by § 50-32-101(6), MCA. That statute in turn defines a "dangerous drug" as any "drug, substance, or immediate precursor in Schedules I through V set forth in part 2." To prove that Clark possessed a dangerous drug, the prosecution was thus required to produce evidence specifically identifying the substance he allegedly possessed. The evidence necessary to prove he possessed methamphetamine differs from that necessary to prove that he possessed amphetamine, regardless of the fact that both substances constitute "dangerous drugs."

¶59 In fact, had the prosecution not amended the information, and had it produced evidence that Clark possessed amphetamine rather than methamphetamine as identified in the original information, the prosecution would have failed in its burden of proof. For that very reason, the prosecution sought to amend the information to accurately identify the substance as amphetamine. For that same reason, once the information was amended, the District Court specifically instructed the jury that to convict the defendant of criminal possession of dangerous drugs, the prosecution must prove that the "defendant possessed amphetamine."

¶60 So yes, while the majority is correct in its view that in either case the prosecution must prove that Clark possessed a "dangerous drug," it is also true that the prosecution bears the burden of specifically identifying the substance he possessed in order to prove that the substance constitutes a "dangerous drug" within the meaning of the statute. Because the required proof changes, depending on substance possessed, it is my view that the amendment to the information was one of substance.

¶61 For this reason, I would reverse the District Court and hold that it was required to arraign Clark on the charges contained within the amended information.

¶62 I concur in part and dissent in part.

/S/ WILLIAM E. HUNT, SR.

Justice Terry N. Trieweiler concurs in the forgoing concurring and dissenting opinion.

/S/ TERRY N. TRIEWEILER