DA 10-0295

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 131

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

DONALD RUDOLPH STOCK,

        Defendant and Appellant.


APPEAL FROM:    District Court of the First Judicial District,
                    In and For the County of Lewis and Clark, Cause No. ADC 2009-123
                    Honorable Dorothy McCarter, Presiding Judge


COUNSEL OF RECORD:

        For Appellant:

                William F. Hooks, Chad Wright, Attorneys at Law, Helena, Montana

                Gregory A. Jackson, Attorney at Law, Helena, Montana

        For Appellee:

                Steve Bullock, Montana Attorney General, Tammy K Plubell, Assistant
                Attorney General, Helena, Montana

                Leo J. Gallagher, Lewis and Clark County Attorney, Tara Harris, Deputy
                County Attorney, Helena, Montana


                          Submitted on Briefs:  April 26, 2011

                                    Decided:  June 7, 2011

Filed:

                  _____
                              Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Donald Stock (Stock) appeals from his convictions of felony incest, involving his fourteen-year-old son and six-year-old daughter, in violation of §§ 45-5-507(1), (4) and 45-2-101(8), MCA, and his conviction of felony tampering with evidence in violation of § 45-7-207, MCA. We affirm.

## ISSUES

¶2 A restatement of Stock's issues on appeal is:

¶3 1. Did the District Court err when it allowed a six-year-old alleged incest victim to testify via two-way electronic audio-video communication rather than in the presence of Stock and the jury?

¶4 2. Did the District Court abuse its discretion when it prohibited Stock from conducting a forensic interview with, and calling as a trial witness, the four-year-old sibling of the two alleged incest victims?

¶5 3. Did the District Court err in allowing the State to present evidence and summary testimony regarding pornographic images obtained from Stock's computer under § 26-1-103, MCA, the transaction rule?

## FACTUAL AND PROCEDURAL BACKGROUND

¶6 Stock married Debbie Wakeland on May 5, 2001. Debbie had a son, E.S., from a previous marriage who Stock adopted in April 2006. In 2002, Debbie gave birth to K.S., a daughter, and in 2004 Debbie gave birth to Z.S., a son. In December 2008 Debbie decided she could no longer remain married to Stock and told him she was leaving. This

marked the beginning of lengthy and rancorous dissolution and child custody proceedings.

**K.S. Permitted to Testify Outside the Presences of Stock and the Jury**

¶7 On May 1 2009, fourteen-year-old E.S. confided in a school counselor that Stock was sexually abusing him. After an investigation of the allegations by Child Protective Services and the Helena Police Department, the State charged Stock with felony incest committed against E.S. On August 26, 2009, the State amended the Information to include a second count of felony incest involving Stock's six-year-old daughter, K.S., and one count of tampering with evidence.

¶8 Pursuant to § 46-16-277, MCA, the State moved the District Court to allow K.S. to testify outside the presence of Stock via two-way electronic audio-video communication. Stock objected. After the motion was fully briefed, the District Court held a hearing on November 4, 2009, in compliance with § 46-16-228(1), MCA. Based on the evidence and arguments presented in the briefing and at the hearing, the District Court found that K.S. would be unable to testify in Stock's presence and concluded, after considering all of the factors enumerated in § 46-16-226(1)(a), MCA, that K.S. should be permitted to testify outside the presence of the jury and the defendant. Stock appeals this pretrial ruling.

**Stock Prohibited from Interviewing Z.S.**

¶9 Stock moved the court for an order to allow him to conduct forensic interviews of E.S., K.S., and four-year-old Z.S. The State objected to Stock's request as to Z.S. on the grounds that Z.S. was not going to be called as a witness and Stock failed to establish a

substantial need to interview him. The State did not object to his request related to E.S. or K.S. On October 8, 2009, prior to the court's ruling on the motion, Stock subpoenaed E.S., K.S., and Z.S. to testify at trial. On October 21, 2009, the State moved in limine to bar Stock from presenting testimony from Z.S., arguing that Z.S. had no relevant testimony to offer, Z.S. was incompetent to testify because he could not distinguish truth from a lie, and compelling him to testify would be psychologically damaging to Z.S.

¶10    On November 6, 2009, the District Court denied Stock's request to interview Z.S. because it concluded that Stock had not established a substantial need to interview such a young child. On January 6, 2010, the District Court denied Stock's request to have Z.S. testify at trial because of Z.S.'s incompetence and the potential psychological harm to him. Stock appeals the pretrial rulings precluding him from interviewing Z.S. and calling him as a witness.

**Admissible Pornographic Computer Images from Stock's Computer**

¶11    During one of her interviews with police investigators, K.S. revealed that Stock had used a computer to show her a video of a "little green man" wearing a white diaper who would pull down the diaper to expose his "booty." K.S. told the investigators that it was "nasty" and that the incident occurred at Stock's workplace. The State obtained a search warrant to search Stock's computers for this video as evidence that Stock was "grooming" his victims by showing them sexually inappropriate images. The search was conducted by Agent Cooperider from the Department of Justice's Computer Crime Unit. Cooperider's search of Stock's computers did not turn up the video of a little green man, but did result in discovery of graphic images depicting young men engaged in

4

homosexual activity. The images ranged from provocative poses to anal and oral sex scenes.

¶12   Helena Police Department Detective Ekola applied for and obtained a second search warrant specific to the images discovered by Cooperider during execution of the first search warrant. Cooperider retrieved these images from a computer that was assigned the user name of Donald Stock and was password-protected. Cooperider summarized his findings in written reports.

¶13   The State filed notice of intent to introduce evidence of Stock's prior bad acts by way of Cooperider's written summary reports; the State did not seek to introduce the pornographic images themselves. It its notice, the State argued that the evidence was admissible under M. R. Evid. 404(b) (hereinafter Rule 404(b)) and the transaction rule, § 26-1-103, MCA. Stock objected, arguing that the State could not prove it was Stock who was responsible for accessing the internet images.

¶14   On December 22, 2009, the District Court concluded that the pornographic evidence found on Stock's computer was admissible under the transaction rule. The court reasoned that the electronic evidence obtained from Stock's computer was directly related to elements of the incest charges with respect to both children. It further concluded the relevance of the evidence far outweighed any prejudice to Stock and denied Stock's motion to exclude the electronic evidence. Stock appeals this pretrial ruling.

¶15   Ultimately, on March 17, 2010, after a seven-day jury trial, Stock was found guilty of all offenses charged. On June 11, 2010, the District Court sentenced Stock to Montana

State Prison for a term of fifty years with twenty-five suspended for each count of felony incest and for a term of ten years for felony evidence tampering. Stock is not eligible for parole until Z.S., his youngest child, is eighteen years old. Stock timely appeals only the three pretrial rulings discussed above. Additional facts are included below as necessary.

## STANDARDS OF REVIEW

¶16 Stock argues the use of two-way electronic audio-video communication testimony during trial violates his constitutional right to confront witnesses against him. Our review of constitutional questions is plenary and we therefore review de novo a district court's interpretation of the Sixth Amendment to the United States Constitution and Article II, Section 24 of the Montana Constitution. *State v. Norquay*, 2011 MT 34, ¶ 13, 359 Mont. 257, 248 P.3d 817.

¶17 Generally, we review a district court's evidentiary rulings for an abuse of discretion. *State v. Mackrill*, 2008 MT 297, ¶ 37, 345 Mont. 469, 191 P.3d 451. Rulings on motions in limine are evidentiary rulings and the district court has broad discretion to determine the relevance and admissibility of evidence. *State v. Snell*, 2004 MT 334, ¶ 17, 324 Mont. 173, 103 P.3d 503. A district court abuses its discretion if it acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice. *Mackrill*, ¶ 37. Notwithstanding this deferential standard, however, judicial discretion must be guided by the rules and principles of law; thus, our standard of review is plenary to the extent that a discretionary ruling is based on a conclusion of law. *Id*.

## DISCUSSION

¶18 *Issue One: Did the District Court err when it allowed a six-year-old alleged incest victim to testify via two-way electronic audio-video communication rather than in the presence of Stock and the jury?*

¶19 Stock argues that §§ 46-16-226 to -229, MCA, which is Montana's statutory scheme allowing a child witness to testify outside the presence of a criminal defendant, is unconstitutional because it violates a criminal defendant's right to confront witnesses against him. Statutes are presumed to be constitutional, and we construe them in a manner that avoids unconstitutional interpretation. *State v. Trull*, 2006 MT 119, ¶ 30, 332 Mont. 233, 136 P.3d 551. The party challenging a statute's constitutionality has the burden of proving, beyond a reasonable doubt, that the statute is unconstitutional, and any doubt is resolved in favor of the statute. *Id.* (citing *State v. Stanko*, 1998 MT 321, ¶ 16, 292 Mont. 192, 974 P.2d 1132).

¶20 For purposes of this case, a child witness is an individual who is "13 years of age or younger at the time the individual is called as a witness in a criminal proceeding involving a sexual or violent offense." Section 46-16-226(1)(a), MCA. Section 46-16-227, MCA, provides that:

> [u]pon motion by the prosecution or defense if the defense intends to call a child witness other than the victim in its case in chief, a court shall conduct a hearing to consider whether the testimony of a child witness may be taken outside the presence of the defendant and communicated to the courtroom by two-way electronic audio-video communication.

¶21 Section 46-16-228, MCA, outlines the factors a court must consider in determining whether a child witness is in need of protection. Section 46-16-229(1), MCA, states that a court "shall order that the testimony of a child witness be taken by two-way electronic audio-video communication" if it finds by clear and convincing

evidence "the child witness is unable to testify in open court in the presence of the defendant" because the child witness's fear is caused by the presence of the defendant, because the child witness would suffer substantial emotional trauma from testifying in the presence of the defendant, or because conduct by the defendant or the defendant's attorney would cause the child witness to be unable to continue testifying.

¶22     For the following reasons, we conclude that Montana's statutory scheme does not violate either the Sixth Amendment to the United States Constitution or Article II, Section 24 of the Montana Constitution.  Moreover, we conclude that the District Court did not err in concluding that sufficient evidence existed to permit six-year-old K.S. to testify outside the presence of Stock via two-way electronic audio-video communication.

¶23     The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  The Sixth Amendment's right of an accused to confront the witnesses against him is a fundamental right and is obligatory on the states by virtue of the Fourteenth Amendment to the United States Constitution.  *Pointer v. Texas*, 380 U.S. 400, 403, 85 S. Ct. 1065, 1067-68 (1965); *State v. Camitsch*, 192 Mont. 124, 132, 626 P.2d 1250, 1255 (1981).  The United States Supreme Court has stated that the primary purpose of the Confrontation Clause is to "ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding" through a combination of elements of confrontation.  *Maryland v. Craig*, 497 U.S. 836, 845, 110 S. Ct. 3157, 3163 (1990).  The elements of confrontation include physical presence of the witness,

8

testimony under oath, cross-examination of the witness, and observation of the witness's demeanor by the trier of fact. *Id*. at 845-46, 110 S. Ct. at 3163. While the United States Supreme Court has observed that the Confrontation Clause guarantees criminal defendants "a face-to-face meeting with witnesses appearing before the trier of fact," it has "never held, however, that the Confrontation Clause guarantees criminal defendants the *absolute* right to a face-to-face meeting with witnesses against them at trial." *Id.* at 844, 110 S. Ct. at 3162-63 (emphasis in original). Moreover, the United States Supreme Court has also held that the word "confronted" cannot solely mean a literal face-to-face confrontation because such a reading would "abrogate virtually every hearsay exception, a result long rejected as unintended and too extreme." *Id.* at 848, 110 S. Ct. at 3165 (quoting *Ohio v. Roberts*, 448 U.S. 56, 63, 100 S. Ct. 2531, 2537 (1980), *overruled on other grounds*, *Crawford v. Washington*, 541 U.S. 36, 62-63, 124 S. Ct. 1354, 1370-71 (2004)).

¶24 In *Craig*, a criminal defendant challenged Maryland's statutory scheme that permitted child witnesses to testify via closed-circuit television in a child abuse case. Much like Montana's statutory scheme, Maryland law required the trial court to make case-specific findings that the child witness was in need of protection. *Craig*, 497 U.S. at 840-42, 110 S. Ct. at 3161. Subsequent to a hearing, the Maryland court found that the child could not testify in the presence of the defendant and thus permitted the child to testify via closed-circuit television. *Id.* at 842-43, 110 S. Ct. at 3162. Upholding Maryland's law, the United States Supreme Court held that "[s]o long as a trial court makes such a case-specific finding of necessity, the Confrontation Clause does not

9

prohibit a State from using a one-way closed circuit television procedure for the receipt of testimony by a child witness in a child abuse case." *Id.* at 860, 110 S. Ct. at 3171. The United States Supreme Court recognized that "a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Id.* at 850, 110 S. Ct. at 3166.

¶25 Without much legal analysis to bolster his assertions, Stock argues that *Crawford* implicitly overruled *Craig* and expressed a preference for literal confrontation. We disagree. *Crawford* did not overrule or even address *Craig*, nor have we found any other state or federal case in which a court has concluded *Crawford* overruled *Craig*. Conversely, at least four other appellate courts have explicitly stated the two cases may coexist. *See Michigan v. Buie,* 775 N.W.2d 817, 825 (App. 2009) (applying *Craig* to the issue of whether expert testimony given via two-way interactive technology violated the defendant's confrontation rights); *Utah v. Henriod,* 131 P.3d 232, ¶ 16 (2006) (rejecting the argument that *Crawford* abrogated *Craig*); *Wisconsin v. Vogelsberg*, 724 N.W.2d 649, ¶¶ 14-17 (App. Dist. IV 2006), *cert. denied*, *Vogelsberg v. Wisconsin*, 550 U.S. 936, 127 S. Ct. 2265 (2007) (applying *Craig* to the issue of whether testimony given by a child witness from behind an opaque screen violated a defendant's confrontation rights); *Missouri v. Griffin*, 202 S.W.3d 670, 680-81 (App. W. Dist. 2006) (rejecting the argument that *Crawford* overruled *Craig*).

10

¶26 In *Crawford*, the United States Supreme Court revised its approach to the admissibility of testimonial hearsay against a criminal defendant at trial, holding that it was admissible only if the defendant had a prior opportunity for cross-examination and the witness is unavailable at trial. *Crawford*, 541 U.S. at 68, 124 S. Ct. at 1374. The *Crawford* Court clarified that:

> [t]o be sure, the Clause's ultimate goal is to ensure reliability of evidence, but it is a *procedural* rather than a *substantive* guarantee. *It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination.* The Clause thus reflects a judgment, not only about the desirability of reliable evidence (a point on which there could be little dissent), but about how reliability can best be determined.

*Id.* at 61, 124 S. Ct. at 1370 (emphasis added). We continue to maintain this distinction in our Confrontation Clause jurisprudence.

¶27 We relied on *Craig* in *State v. Davis*, 253 Mont. 50, 830 P.2d 1309 (1992) and upheld the use of an opaque screen between a defendant and child witnesses during the children's testimony in a sexual abuse case. *Davis*, 253 Mont. at 58-59, 830 P.2d at 1315. We determined that the basic elements articulated in *Craig* were satisfied because the child witnesses were physically present in the court, an oath was administered, the children were cross-examined, and the jury was able to observe the demeanor of the child witnesses. *Id.* at 58, 830 P.2d at 1315. Moreover, as required by *Craig*, the district court made case-specific findings and concluded the potential for trauma to the child witnesses existed, the trauma resulted from mere presence of the defendant in the courtroom, and the trauma would be more than ordinary courtroom nervousness. *Id.* at 57, 830 P.2d at 1314. We affirmed the district court, holding that it did not err in permitting the opaque

11

screen to be placed between the defendant and the child witnesses during the children's testimony.

¶28 Separate and apart from the federal right, Article II, Section 24 of the Montana Constitution guarantees that a criminal defendant has the right "to meet the witnesses against him face to face." Stock argues that we should read this provision to afford greater protection to criminal defendants than is afforded by its federal counterparts, by holding that the Montana Constitution requires literal face-to-face confrontation. While we have held that Article II, Section 24 provides greater protection than its federal counterpart, *see e.g. State v. Clark*, 1998 MT 221, ¶22, 290 Mont. 479, 964 P.2d 766, we have never interpreted that greater protection to entitle a criminal defendant to *literal* face-to-face confrontation with all witnesses.

¶29 With respect to confrontation, we continue to recognize that Article II, Section 24 guarantees criminal defendants the right to "full cross-examination" because it is a "critical aspect of the right to confrontation" and "the hallmark of our system of justice because it produces truth. Such things as demeanor of a witness, his or her body language, and a witness's hesitancy in giving testimony, often communicate as much to the fact-finder as the spoken words." *State v. Parker*, 2006 MT 258, ¶ 20, 334 Mont. 129, 144 P.3d 831 (quoting *Clark*, ¶¶ 22-23).

¶30 Consistent with the requirements of the Confrontation Clause as articulated in *Craig* and in Article II, Section 24 of the Montana Constitution as articulated in *Parker*, we conclude that Montana's statutory scheme permitting child witnesses to testify outside the presence of a criminal defendant is constitutional because it requires an adequate

12

showing of necessity and serves the compelling state interest of protecting a child witness from suffering further trauma by testifying in the presence of an alleged abuser. Once a motion is presented under § 46-16-227, MCA, to have the testimony of a child witness taken outside the presence of the defendant, the district court must hold a hearing pursuant to § 46-16-228, MCA. During the hearing the district court is required to make case-specific findings based on the evidence presented by the moving party as to whether the welfare of the child witness necessitates taking his or her testimony via two-way audio-video communication. Section 46-16-228(3), MCA, outlines the factors a district court must consider during the hearing, and § 46-16-229(1), MCA, articulates the three circumstances under which a district court must order the testimony of the child witness be taken via two-way audio-video communication. Moreover, § 46-16-229(2), MCA, articulates the precise procedure for taking a child witness's testimony.

¶31 Even though a child witness may testify outside the physical presence of the defendant, the other elements of confrontation are satisfied. The child witness must testify under oath, is subject to contemporaneous cross-examination by the defendant's attorney, and is viewed and heard, albeit via a monitor, by the defendant and the fact-finder. Additionally, the defendant is able to communicate contemporaneously with his or her attorney during the testimony. Section 46-16-229(3), MCA.

¶32 Consistent with the statutory requirements, K.S. testified under oath, Stock had the opportunity of a full and contemporaneous cross-examination of K.S., and Stock and the jury had the ability to listen to K.S. and observe her demeanor, body language, and any hesitancy during testimony in real-time via the two-way audio-video monitor. Stock also

13

had the opportunity to confer with his attorney during the testimony. Stock's right to confront K.S., a child witness against him, was not violated when the District Court permitted her to testify outside of Stock's presence pursuant to §§ 46-16-226 to -229, MCA.

¶33 Stock argues that the District Court's findings were insufficient to justify the use of audio-video testimony because the court found that six-year-old K.S. would be traumatized by testifying in open court, not specifically by the presence of the defendant. Stock misstates the District Court's findings and misinterprets the testimony given during the § 46-16-228, MCA, hearing. During the hearing, Sandi Ashley, LCPC, testified at length as K.S.'s counselor that Stock was a "trauma trigger" for K.S. because Stock's presence at any time makes K.S. anxious, scared, and upset to the point that she would be unable to testify. Ashley also testified that K.S. suffers from separation and sexual assault issues, which have led to K.S. being treated for anxiety disorder and post-traumatic stress disorder. Moreover, Ashley testified that she would be unable to prepare K.S. to testify in Stock's presence. After the hearing, the District Court found "by clear and convincing evidence that if required to testify in the courtroom in front of the jury *and the Defendant*, K.S. would be unable to testify in a meaningful way and, in addition, would be severely traumatized and emotionally damaged." (Emphasis added.)

¶34 Stock has failed to prove beyond a reasonable doubt that §§ 46-16-226 to -229, MCA, are unconstitutional. Stock's constitutional right to confront witnesses against him was not violated when K.S. testified via two-way electronic audio-video communication. Further, we hold that there was substantial evidence to support the District Court's

findings and conclude the District Court did not err in permitting K.S. to testify outside the presence of the defendant via two-way electronic audio-video communication.

¶35 *Issue Two: Did the District Court abuse its discretion when it prohibited Stock from conducting a forensic interview with, and calling as a witness at trial, the four-year-old sibling of the two alleged incest victims?*

¶36 Stock argues that he was prohibited from mounting a defense when the District Court granted the State's motion in limine prohibiting Stock from interviewing or calling as a witness Z.S., the four-year-old sibling of E.S. and K.S. Stock asserts on appeal that Z.S. *could* have testified that he had not been abused by Stock or that he did not see Stock abuse K.S.; however, Stock offers no evidence on the record to suggest that Z.S. had any personal knowledge of the alleged abuse of E.S. or K.S. The State contends that the District Court did not err in prohibiting Stock from interviewing Z.S. or calling him as a witness because Z.S. was not competent to testify and did not have relevant testimony to give.

¶37 The purpose of a motion in limine is "to prevent the introduction of evidence which is irrelevant, immaterial, or unfairly prejudicial." *State v. Meredith*, 2010 MT 27, ¶ 42, 355 Mont. 148, 226 P.3d 571 (quoting *State v. Krause*, 2002 MT 63, ¶ 32, 309 Mont. 174, 44 P.3d 493). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M. R. Evid. 401. Only relevant evidence is admissible. M. R. Evid. 402. Evidence that is relevant may be excluded, however, if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. M. R. Evid. 403.

¶38 Preliminary qualifications of a person to be a witness shall be determined by the court. M. R. Evid. 104(a). While all witnesses are presumed to be competent, M. R. Evid. 601(b) provides that a person is disqualified to be a witness if the court finds that the witness is "incapable of understanding the duty of a witness to tell the truth." A witness appreciates the duty to tell the truth if he or she understands the difference between a truth and a lie and understands that he or she must tell the truth in court. *State v. Olsen*, 286 Mont. 364, 370, 951 P.2d 571, 575 (1997). Additionally, a witness may not testify as to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. M. R. Evid. 602. Regarding child witnesses, there is no minimum age requirement; however, "child witnesses need 'protection against the potential emotional and psychological injuries' that may occur with regular litigation procedures." *Henricksen v. State*, 2004 MT 20, ¶ 46, 319 Mont. 307, 84 P.3d 38 (quoting *State v. Sor-Lokken*, 247 Mont. 343, 349, 805 P.2d 1367, 1372 (1991)).

¶39 Stock initially moved to have a forensic interviewer conduct interviews of E.S., K.S., and Z.S. However, after briefing the District Court determined that that there would be no interview of Z.S. based on his age, that he would not be called as a witness by the State, and that Stock had failed to establish a substantial need to interview him pursuant to § 46-15-322(5), MCA ("Upon motion showing that the defendant has substantial need in preparation of the case for additional material or information not otherwise provided for and that the defendant is unable, without undue hardship, to obtain the substantial equivalent by other means, the court, in its discretion, may order

16

any person to make it available to the defendant."). Stock also subpoenaed Z.S. to be a witness at trial. Weighing Stock's desire to have Z.S. testify against Z.S.'s incompetency and potential psychological harm, the District Court granted the State's motion in limine to prohibit Z.S. from testifying. The court found Z.S. had not disclosed any information that would be helpful from either party's perspective, the State was not calling Z.S. as a witness, Z.S. was incompetent because he could not differentiate a truth and a lie, and testifying would be psychologically damaging to Z.S. according to his counselor's testimony.

¶40 Given the deference we afford to evidentiary rulings by a district court, we conclude that the District Court did not abuse its discretion by prohibiting Z.S. from being interviewed or from testifying, and we conclude that Stock was not thereby denied the right to present a defense. Although given every opportunity, Stock failed to show that Z.S. possessed any relevant information. Under the circumstances, the District Court did not abuse its discretion because it did not act arbitrarily. Given the record before us, we conclude it was entirely reasonable for the court to conclude that Z.S. did not have relevant testimony to offer, was incompetent to testify, and would be psychologically harmed if required to testify. Therefore, we affirm the District Court's order prohibiting Z.S. from being interviewed and from testifying at trial.

¶41 *Issue Three: Did the District Court abuse its discretion in allowing the State to present evidence and summary testimony regarding pornographic images obtained from Stock's computer under § 26-1-103, MCA, the transaction rule?*

¶42 Prior to trial, the State filed notice of intent to introduce electronic evidence of internet usage and pornographic images found on a computer seized from Stock's

workplace. The State asserted that this evidence was admissible under the transaction rule and Rule 404(b). Stock objected to the introduction of the pornographic images found on the computer and the keyed-in search terms on three grounds: (1) the State could not prove it was Stock who engaged in the conduct; (2) the images were irrelevant because neither E.S. nor K.S. claimed to have seen them; and (3) the evidence is improper character evidence intended solely to inflame the jury. The parties fully briefed the admissibility of the evidence on both grounds—the transaction rule and Rule 404(b). The District Court ultimately denied Stock's motion to suppress the evidence and allowed the State to present the electronic evidence, relying on the transaction rule. The court found that it was relevant evidence of an integral part of the offense of incest, and its relevance far outweighed any prejudice to Stock.

¶43 Importantly, the State ultimately decided not to introduce the actual pornographic images to which Stock objected. During trial, the State called Cooperider to testify generally as to how he searched Stock's computers and what he found during those searches. Cooperider testified as to the search terms that had been entered and described the pornographic images. Contrary to Stock's assertion on appeal, Cooperider's descriptions were neither graphic nor lurid. During Cooperider's testimony, the State moved to introduce six written summaries (State's Exhibits 74-79) of Cooperider's findings. Exhibits 74-76 and 79 depicted the summaries of the graphics, filenames, and cookies Cooperider extracted from Stock's computer. The summaries included the filename, path, size, and—except for Exhibit 74—the dates and times the file was created, modified, and accessed. Exhibits 77 and 78 were similar summaries

accompanied by screenshots of searches performed on Stock's computer. Notably, when these summary exhibits were offered, Stock affirmatively stated he had no objection to the admission of five of the six exhibits. He objected only to the admission of State's Exhibit 74 because the summaries did not include the dates and times the files were created, modified, and accessed.

¶44 On appeal, Stock argues that the District Court erred by admitting the electronic evidence under the transaction rule because it was not inextricably intertwined with the allegations of incest. The State argues that the District Court did not err in admitting the evidence under the transaction rule and, in the alternative, argues we may affirm admissibility under Rule 404(b) since the parties briefed admissibility on both grounds. It his reply brief, Stock maintains that the State raises admissibility of the evidence under Rule 404(b) for the first time on appeal; however, the District Court's order clearly shows that the State argued admissibility on both grounds.

¶45 Notwithstanding these arguments, we decline to reach the merits of this issue because Stock failed to preserve it for appeal. We have held that "a motion in limine *may relieve a party of the obligation to contemporaneously object at trial providing that the motion is specific and articulates the grounds for the objection*." *State v. Ankeny*, 2010 MT 224, ¶ 39, 358 Mont. 32, 243 P.3d 391 (emphasis added). However, "specific objections must be made to portions of testimony deemed inappropriate; broad general objections do not suffice." *Ankeny*, ¶ 37 (internal citations omitted). To preserve a pretrial objection for appeal through a motion in limine, the motion must be "sufficiently specific as to the basis for the objection." *State v. Vukasin,* 2003 MT 230, ¶ 29, 317

Mont. 204, 75 P.3d 1284 (quoting *State v. Stuit*, 277 Mont. 227, 230, 921 P.2d 866, 868 (1996)). For the following reasons, we conclude Stock's pretrial objection was not sufficiently specific on this issue to preserve it for appeal, particularly when Stock did not make a contemporaneous objection to Cooperider's testimony or admission of the summary exhibits at trial.

¶46 In his pretrial motion to suppress the electronic evidence, Stock objected to the introduction of the pornographic images themselves and the search terms. The images were never introduced. Stock did not object to Cooperider being called as a witness, even though he was aware of the contents of Cooperider's testimony. At trial, Stock did not object to Cooperider's testimony and, in fact, affirmatively stated he had no objection to the admission of State's Exhibits 75-79, which were Cooperider's written summaries of the electronic evidence. Stock objected only to the admission of State's Exhibit 74 because it was not time-stamped; Stock did not object that it was inadmissible under Rule 404(b). His objection was overruled and he does not appeal that trial ruling.

¶47 Now, on appeal, Stock complains that he was prejudiced because "Cooperider provided lurid, graphic descriptions of the images . . . [t]he admission of such evidence could only serve to shock the jury." Not only is his characterization of Cooperider's testimony as "lurid" incorrect, Stock never objected to Cooperider as a witness or to any portion of Cooperider's testimony. Stock cannot now complain that the trial court erred in admitting that testimony because "his failure to object to the testimony during trial failed to provide the District Court with 'the opportunity to rule on the admissibility of

evidence and to correct itself.' " *Vukasin*, ¶ 37 (quoting *Stuit*, 277 Mont. at 230, 921 P.2d at 868).

¶48    Stock's motion in limine challenged the admissibility of the pornographic images themselves. The motion in limine did not preserve for appeal any argument as to a summary description of the photographic images. This fact, when combined with Stock's affirmative representation that he had no objection to the summary evidence, compels the conclusion that Stock failed to preserve any possible error arising out of the admission of the summary evidence for appeal. We therefore affirm the District Court's pretrial ruling denying Stock's motion to suppress and admitting the summaries of the electronic evidence from Stock's workplace computer.

## CONCLUSION

¶49    For the foregoing reasons, we affirm the District Court's rulings allowing K.S. to testify via two-way electronic audio-video communication pursuant to § 46-16-229, MCA, prohibiting Z.S. from being interviewed or called as a witness, and allowing the State to present electronic evidence obtained from Stock's computer.

¶50    Affirmed.

/S/ PATRICIA COTTER

We concur:

/S/ MIKE McGRATH
/S/ JIM RICE
/S/ BRIAN MORRIS
/S/ BETH BAKER

21