# FILED

October 23 2012

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 12-0184 and DA 12-0185

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2012 MT 234

NORTHERN PLAINS RESOURCE COUNCIL, INC.
and NATIONAL WILDLIFE FEDERATION,

        Plaintiffs and Appellants,

    v.

MONTANA BOARD OF LAND COMMISSIONERS,
STATE OF MONTANA, ARK LAND COMPANY, INC.
and ARCH COAL, INC.,

        Defendants and Appellees.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

MONTANA ENVIRONMENTAL INFORMATION
CENTER and SIERRA CLUB,

        Plaintiffs and Appellants,

    v.

MONTANA BOARD OF LAND COMMISSIONERS,
ARK LAND COMPANY, INC. and ARCH COAL, INC.,

        Defendants and Appellees.

APPEAL FROM:    District Court of the Sixteenth Judicial District,
                In and For the County of Powder River,
                Cause Nos. DV-38-2010-2480 and DV-38-2010-2481
                Honorable Joe L. Hegel, Presiding Judge

COUNSEL OF RECORD:

For Appellants:

Jack R. Tuholske; Tuholske Law Office, Missoula, Montana
Patrick Parenteau; Vermont Law School, South Royalton, Vermont
(for Northern Plains Resource Council and National Wildlife Federation)

Timothy J. Preso, Jenny K. Harbine; Earthjustice, Bozeman, Montana
(for Montana Environmental Information Center and Sierra Club)

For Appellees:

Steve Bullock, Montana Attorney General; Jennifer M. Anders, Assistant
Attorney General, Keif Storrar, Legal Intern, Helena, Montana

Candace F. West, Tommy H. Butler, Special Assistant Attorneys General,
Montana Department of Natural Resources and Conservation, Helena,
Montana

Mark L. Stermitz, Jeffery J. Oven, Christopher C. Stoneback; Crowley
Fleck PLLP, Missoula, Montana (for Ark Land Company, Inc. and Arch
Coal, Inc.)

Submitted on Briefs: October 10, 2012

Decided: October 23, 2012

Filed:

Clerk

2

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1    The Northern Plains Resource Council, the National Wildlife Federation, the Montana Environmental Information Center, and the Sierra Club (collectively referred to as NPRC) appeal from the District Court's memorandum and order of February 3, 2012 granting summary judgment to the Montana Board of Land Commissioners, Ark Land Co., and Arch Coal. We affirm.

¶2    We restate the issue for review: Whether the State Land Board properly issued leases to Ark Land Co., a subsidiary of Arch Coal, Inc., without first conducting environmental review under the Montana Environmental Policy Act, Title 75, Chapter I, MCA.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3    Plaintiffs filed suits seeking declaratory rulings that the State Land Board wrongfully failed to conduct environmental studies required by the Montana Constitution prior to entering leases with Arch Coal on March 8, 2010. The leases cover State lands located in the Otter Creek drainage, a tributary of the Tongue River, in southeastern Montana. Arch Coal leased the State's mineral interest for the purpose of strip mining for coal. In 1997 the State of Montana obtained the mineral rights to these lands from the United States, and they are part of a larger coal reserve covering almost 20,000 acres. That land is checker-boarded with mineral interests that are 82% privately owned; 10% State owned; and 8% owned by the United States. The State holds its mineral interest in trust for the financial support of public education.

¶4 In 2003, the Legislature authorized the State to offer the Otter Creek mineral interests for leasing. After study, appraisal, presentation of a draft lease, and opportunity for public comment, the State Land Board approved leases to Arch Coal in 2010. The State received a bonus payment from Arch Coal of $85,000,000.

¶5 The Arch Coal leases do not authorize or permit any mining activity, and do not authorize or permit any degradation to any land or water. The leases do not allow any significant surface disturbance without acquisition of all required permits from the State of Montana. The leases specifically provide:

> All rights granted to Lessee under this Lease are contingent upon Lessee's compliance with the Montana Strip Mine Siting Act and the Montana Strip and Underground Mine Reclamation Act (Title 82, Chapter 4, Parts 1 and 2, MCA) and upon Lessor review and approval of Lessee's mine operation and reclamation plan. The rights granted under this Lease are further subject to agency responsibilities and authority under the provisions of the Montana Environmental Policy Act.
>
> . . .
>
> Lessor may prescribe the steps to be taken and reclamation to be made with respect to the land and improvements thereon. Nothing in this section limits Lessee's obligation to comply with any applicable state or federal law, rule, regulation, or permit.
>
> . . .
>
> This Lease is subject to further permitting under the provisions of Title 75 [MEPA] or 82 [mine reclamation], Montana Code Annotated. Lessee agrees to comply with all applicable laws and rules in effect at the date of this lease, or which may, from time to time, be adopted and which do not impair the obligations of this Lease and do not deprive the Lessee of any existing property right recognized by law.

The State may declare the leases forfeited and canceled if Arch Coal fails to fully discharge any of its duties. The leases also require Arch Coal to implement written

4

operating plans in agreement with the Northern Cheyenne Tribe before any mining commences.

¶6     The State contends that environmental review under MEPA will occur at least twice before any coal is mined.  First, Arch Coal will have to obtain a prospecting permit under the Montana Strip and Underground Mine Reclamation Act, Title 82, Chapter 4, MCA, prior to gathering information about the coal reserves.  Second, prior to any mining Arch Coal must obtain an operating permit under § 82-4-221, MCA, which will include detailed plans for mining, reclamation, revegetation and rehabilitation of the disturbed land.  Further, as the parties stipulated in District Court, the mine operation and reclamation plan must be reviewed and approved by the State Land Board.

¶7     NPRC contends that mining and burning the coal may result in a broad range of environmental and other effects including air and water pollution, boom and bust economic cycles and global warming. The State Land Board did not conduct any environmental review prior to entering the leases, relying on § 77-1-121(2), MCA.  That statute expressly exempts the State Land Board from compliance with the Montana Environmental Policy Act (Title 75, Ch. 1, Pts. 1 and 2, MCA) prior to issuing any lease as long as the lease is subject to "further permitting under any of the provisions of Title 75 or 82 [MCA]." For purposes of this case, the effect of the statute is to defer preparation of an environmental impact statement (EIS) until later in the development process.

¶8     NPRC contends that § 77-1-121(2), MCA, is unconstitutional because Article II, Section 3 and Article IX, Sections 1, 2, and 3 of the Montana Constitution require that the

5

State conduct activities such as leasing coal interests in a way that protects its citizens' right to a clean and healthful environment. NPRC contends that the chief mechanism to implement these constitutional protections is the Montana Environmental Policy Act (MEPA), Title 75, Ch. 1, MCA. NPRC further contends that but for § 77-1-121(2), MCA, the State Land Board would have been required to conduct environmental studies prior to entering the coal leases. They further contend that deferral of environmental review until the mine permitting stage unconstitutionally denies them the right to early environmental review that would preserve the State's right to place conditions on the mining; to obtain better financial terms; or to decide to not enter the leases at all.

¶9 In the summary judgment proceedings the parties agreed to a joint statement of uncontested facts. NPRC presented further evidence of the direct and indirect effects of mining and burning the Otter Creek coal. Neither the State nor Arch Coal presented any contrary evidence. Based upon the evidence submitted, the District Court found that it was reasonably certain that mining and burning the coal could add a significant percentage to the carbon dioxide released into the atmosphere, thereby exacerbating global warming and climate change. The District Court found that the effects of climate change include specific adverse effects on Montana's water, air and agriculture. The District Court found that "the myriad adverse environmental consequences alleged by Plaintiffs, including global warming, would occur should the coal be mined and burned."

¶10 The District Court framed the issue regarding § 77-1-121(2), MCA, as being whether the coal lease was such an irretrievable commitment of resources to a project that may significantly adversely affect the human environment so as to implicate the

6

environmental protections of the Constitution, implemented through MEPA. The State argued that it retained the right under the lease and the law to impose any reasonable environmental restrictions that could have been imposed at the leasing stage, relying upon *Seven Up Pete Venture v. State of Montana*, 2005 MT 146, 327 Mont. 306, 114 P.3d 1009.

¶11 The District Court determined that Arch Coal, by leasing the Otter Creek tracts from the State, acquired "nothing more than the exclusive right to apply for permits from the State." Further, the District Court determined that, as provided in the leases, environmental review under MEPA and any other applicable statutes will take place before there is any significant disturbance of ground or water and before any coal is mined or burned. Even though the District Court determined that it was probable that mining would go forward, there is no guarantee that it will and no basis for determining that adequate environmental protections, as required by Montana law and the leases, will not be put into place during the permitting process. The District Court therefore found that "the State has retained sufficient ability to require adequate environmental protections sufficient to meet its constitutional and trust responsibilities, both environmentally and financially."

**STANDARD OF REVIEW**

¶12 This Court undertakes plenary review of questions of constitutional law. *Seven Up Pete*, ¶ 18. This Court reviews a district court decision on a motion for summary judgment de novo, applying the same criteria under M. R. Civ. P. 56. *Seven Up Pete*, ¶

19. Legislative enactments are presumed to be constitutional. *Powell v. State Fund*, 2000 MT 321, ¶ 13, 302 Mont. 518, 15 P.3d 877.

## DISCUSSION

¶13 Article II, Section 3 of the Montana Constitution provides that all persons have an inalienable right to a clean and healthful environment. Article IX, Section 1 requires the State to maintain and improve a clean and healthful environment, and requires the Legislature to provide for the enforcement and administration of this duty. Article IX, Section 2 requires that all lands disturbed by the taking of natural resources must be reclaimed. Article IX, Section 3 recognizes and confirms all existing water rights and requires the Legislature to provide a system for the administration, control and regulation of water rights.

¶14 One of the ways that the Legislature has implemented Article IX, Section 1 is by enacting MEPA. MEPA is essentially procedural and does not demand any particular substantive decisions. Rather, it requires State agencies to review, through an EIS, major actions that significantly affect the quality of the human environment so that the agencies may make informed decisions. Section 75-1-102, MCA; *Montana Wildlife Fed. v. Montana Board of Oil & Gas Conservation*, 2012 MT 128, ¶ 32, 365 Mont. 232, 280 P.3d 877. Under applicable regulations, an EIS is required for a "major action of state government significantly affecting the quality of the human environment." *Montana Wildlife Fed.*, ¶ 44.

¶15 As Arch Coal and the State argue, State statutes do not provide any other bright line for when preparation of an EIS is required under MEPA. Section 75-1-201(1)(b)(iv),

8

MCA, requires that an EIS be prepared prior to undertaking "major actions of state government significantly affecting the quality of the human environment. . . ." This "significant effect" has been defined as the "go/no go" point of action, beyond which the State will make an "irretrievable commitment of resources." *North Fork Preservation Association v. Department of State Lands*, 238 Mont. 451, 461, 778 P.2d 862, 868 (1989). In *North Fork* this Court held that leasing State lands for oil and gas development was not an irretrievable commitment of resources because the lessee could not undertake any ground-disturbing activity without prior State approval. "Nothing could happen under the leases without government approval." *North Fork*, 238 Mont. at 461, 778 P.2d at 868. Therefore, even though the lease could "ultimately empower" the lessee to conduct oil and gas activities that would have a significant impact on the environment, an EIS was not required at the point of issuing leases. *North Fork*, 238 Mont. at 462, 778 P.2d at 869. This is also the result under parallel Federal leasing and permitting actions. *Connor v. Burford*, 848 F.2d. 1441, 1448 (9th Cir. 1988) (EIS not required when issuing leases for Federal land where permits were required for any development activity), cited in *North Fork*.

¶16    The parallels between *North Fork* and the present case are clear. In both instances the State issued leases for mineral development on State lands, and did so without first completing an EIS. In both instances the leases clearly required express approvals by applicable State agencies before any ground disturbance could take place. In the present case Arch Coal's development rights are expressly contingent upon obtaining permits and approval of mining and reclamation plans under the Strip Mine Siting Act and the Strip

9

and Underground Mine Reclamation Act, as well as approval of the State Land Board. EIS review of the project will take place when the State considers whether to issue those permits and approvals.

¶17 Lessees of State land like Arch Coal have no right to engage in mining operations until all necessary permits required by State law or regulation are obtained. *Seven Up Pete*, ¶¶ 27-28; *Kadillak v. Anaconda Co.*, 184 Mont. 127, 138-140, 602 P.2d 147, 154-155 (1979). As the District Court recognized in the present case, lessees like Arch Coal acquire only "the exclusive right to apply for permits from the State."

¶18 NPRC contends that § 77-1-121(2), MCA, impacts the fundamental right to a clean and healthful environment contained in Article II, Section 3 of the Montana Constitution and therefore the State must present a compelling interest to justify its application. The right to a clean and healthful environment is a fundamental right. *MEIC v. DEQ*, 1999 MT 248, ¶ 63, 296 Mont. 207, 988 P.2d 1236, and a statute that impacts that right to the extent that it interferes with the exercise of that right, is subject to strict scrutiny, requiring the State to provide a compelling interest for its existence. *MEIC*, ¶¶ 55, 60. In *MEIC* this Court found that a statute allowing the discharge of arsenic-containing water without any environmental review "implicated" or "impacted" the right to a clean and healthful environment and thus could survive only upon a showing of a compelling State interest. *MEIC*, ¶ 79.

¶19 Unlike the situation in *MEIC*, the leases at issue in the present case do not remove any action by Arch Coal from any environmental review or regulation provided by Montana law. Those reviews are only deferred from the leasing stage to the permitting

10

stage. As noted above the leases specifically require Arch Coal to comply with all applicable State and Federal laws that apply, and specifically with Montana laws regarding mine siting and mine reclamation and Montana laws requiring the preparation of an EIS analysis. Because the leases themselves do not allow for any degradation of the environment, conferring only the exclusive right to apply for State permits, and because they specifically require full environmental review and full compliance with applicable State environmental laws, the act of issuing the leases did not impact or implicate the right to a clean and healthful environment in Article II, Section 3 of the Montana Constitution. The act of leasing the Otter Creek mineral interests to Arch Coal did not interfere with the exercise of the fundamental right to a clean and healthful environment under the Montana Constitution so as to require strict scrutiny and demonstration of a compelling State interest.

¶20 Therefore, § 77-1-121(2), MCA, is not subject to strict scrutiny requiring demonstration of a compelling State interest. Similarly, "middle-tier" scrutiny is not called for here because the statute does not adversely impact constitutional rights provided for outside of Article II, such as the provisions of Article IX noted above. The requirements of an EIS review under MEPA have been enacted by the Legislature in response to the broad directives found in Article II and Article IX of the Montana Constitution. If no constitutionally-significant interests are interfered with by § 77-1-121(2), MCA, then the State must only demonstrate that the statute has a rational basis. *Kottel v. State*, 2002 MT 278, ¶¶ 50-52, 312 Mont. 387, 60 P.3d 403; *Snetsinger v. Mont. Univ. System*, 2004 MT 390, ¶¶ 16-19, 325 Mont. 148, 104 P.3d 445.

¶21 Sufficient rational basis exists for the deferral of an EIS under the facts of this case until there is a specific proposal to consider, rather than requiring an EIS at the leasing stage when there would be no specific mining proposal to evaluate. Deferring EIS consideration until there is a specific mining proposal thus strives to eliminate duplicate and speculative studies and review, while preserving all environmental protections required by law. For example, § 82-4-222(1), MCA, requires that a permit application contain a complete and detailed plan for the mining, reclamation, revegetation, and rehabilitation of the land and water to be affected by the operation. The plan must include intricate details regarding the land and water to be affected. As a practical matter, little of that information is available at the leasing stage. Execution of the lease grants the prospective operator the opportunity to begin to prepare a complete application for a mining permit. Any environmental review and protections that could have been put into place at the leasing stage can be implemented at later permitting stages, all before any prospecting or actual development begins. In addition, the statute in this case has allowed the State Land Board to generate substantial income for public schools, while still requiring full environmental review prior to any development taking place. Section 77-1-121(2), MCA, is therefore rationally based and does not contravene the Montana Constitution.

¶22 The District Court is affirmed.

/S/ MIKE McGRATH

12

We concur:

/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS
/S/ BETH BAKER