FILED

August 11 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 13-0813

DA 13-0813

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 232

CITY OF MISSOULA,

        Plaintiff and Appellee,

    v.

MICHAEL ARTHUR DUANE,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC-13-416
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Wade Zolynski, Chief Appellate Defender, Lisa S. Korchinski, Assistant Appellate Defender, Helena, Montana

        For Appellee:

                Timothy C. Fox, Montana Attorney General, Jonathan M. Krauss, Assistant Appellate Defender, Helena, Montana

                Jim Nugent, Missoula City Attorney, Gary L. Hendricks, Deputy Missoula City Attorney, Missoula, Montana

Submitted on Briefs:  June 24, 2015
Decided:  August 11, 2015

Filed:

_____
Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1      Michael Arthur Duane appeals from the Fourth Judicial District Court's order affirming the Municipal Court judgment of conviction and sentence for misdemeanor animal cruelty.  We affirm.

## ISSUES

¶2      A restatement of the issues on appeal is:

¶3      Did the District Court err in affirming the Municipal Court decision allowing a witness for the City of Missoula to testify via Skype, an internet-based live two-way video/audio conferencing and communication program, during Duane's trial?

¶4      Did the District Court err in concluding that M. R. Evid. 611(e) does not apply to criminal cases?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5      On February 26, 2013, Michael Arthur Duane and two other persons owned four dogs, one of which was an Australian Shepherd puppy approximately two or three months old.  Duane and the couple kept the dogs in a 17-foot recreational vehicle (RV) parked outside a Missoula motel where the three individuals lived at that time.  Another guest at the motel called the Missoula Police Department upon learning that the puppy had died.  Two officers responded and were permitted to enter and photograph the RV where the remaining dogs were housed.  The RV was filthy and littered with garbage, dog feces and urine, as well as old food, dirty dishes, and old propane tanks.  The windows were completely closed to fresh air and the dogs had no water.  The dead puppy was wrapped in a towel in the motel room and was later taken by the police to a local veterinarian's office for a necropsy.  Dr.

2

Lindsay Sjolin examined the puppy's body and determined it had died from blunt force trauma resulting in multiple internal injuries. Based upon the dogs' living conditions—and not the puppy's death—the three owners were charged in Municipal Court with misdemeanor cruelty to animals. Each requested a separate trial and the Municipal Court granted their requests. This appeal pertains only to Duane.

¶6 Prior to Duane's trial, the City requested that accommodations be made because Sjolin had moved her practice to California. The City asserted that requiring Sjolin to travel to and testify in person at three separate trials would impose an extraordinary expense on the City and a significant burden on Sjolin. The City suggested that it could either substitute Sjolin's supervisor to testify to Sjolin's report or that Sjolin could testify via Skype. The City argued that with the advancements of two-way video/audio technology, the face-to-face confrontation clause would be satisfied.

¶7 Duane and the attorneys for his co-defendants objected to Sjolin's supervisor testifying in her stead. Duane also argued Skype testimony would not satisfy his right to confront the witnesses against him.

¶8 After hearing argument from the City, Duane's attorney, and counsel for the other two defendants, the Municipal Court granted the City's motion. The court determined that Sjolin's supervisor could not testify in place of Sjolin; therefore, Sjolin had to testify in person or via Skype. Relying on *Maryland v. Craig*, 497 U.S. 836, 110 S. Ct. 3157 (1990) and *State v. Stock*, 2011 MT 131, 361 Mont. 1, 256 P.3d 899, the court concluded that Skype testimony would suffice and would not violate Duane's constitutional right to confrontation.

¶9     The Municipal Court conducted a jury trial on August 2, 2013, and Sjolin testified via Skype. At the close of the trial, the jury found Duane guilty. He was subsequently sentenced. Duane notified the court of his intention to appeal and the Municipal Court stayed his sentence. On Duane's appeal, the Fourth Judicial District Court, Missoula County, affirmed the Municipal Court conviction and stayed the sentence pending Duane's appeal to this Court.

## STANDARD OF REVIEW

¶10     A district court's review of a municipal court's orders and judgment is limited to review of the record and questions of law. Sections 3-6-110 and 46-17-311, MCA. In turn, we review a district court's conclusions of law to determine if they are correct. We review evidentiary rulings for abuse of discretion. A court abuses its discretion if it acts arbitrarily or unreasonably, and a substantial injustice results. *State v. Bonamarte*, 2009 MT 243, ¶ 13, 351 Mont. 419, 213 P.3d 457 (internal citations omitted).

¶11     This Court exercises plenary review of constitutional questions; therefore, we review de novo a trial court's interpretation of Article II, Section 24 of the Montana Constitution. *Stock*, ¶ 16.

4

**DISCUSSION**

¶12 *Did the District Court err when it affirmed the Municipal Court decision allowing a witness to testify via Skype, an internet-based live two-way video/audio conferencing and communication program?*

¶13 Article II, Section 24 of the Montana Constitution provides:

> In all criminal prosecutions the accused shall have the right to appear and defend in person and by counsel; to demand the nature and cause of the accusation; *to meet the witnesses against him face to face*; to have process to compel the attendance of witnesses in his behalf, and a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed, subject to the right of the state to have a change of venue for any of the causes for which the defendant may obtain the same.

(Emphasis added.)

¶14 In the last two decades, with the advancement of video conferencing technology, courts across the country have been called upon to address how the use of this technology may affect a criminal defendant's constitutional right to confront his or her accuser. *See, e.g., Maryland v. Craig, U.S. v. Gigante*, 166 F.3d 75 (2d Cir. 1999), and *U.S. v. Yates*, 438 F.3d 1307 (11th Cir. 2006). In *Craig*, the U.S. Supreme Court, noting that the U.S. Constitution provides that a criminal defendant "shall enjoy the right . . . to be confronted with the witnesses against him," upheld a trial court's ruling allowing young child abuse victims to testify by way of one-way closed circuit television. This arrangement allowed the defendant and court to see the witnesses but the children could not see the defendant. *Craig*, 497 U.S. at 844, 110 S. Ct. at 3162. The Supreme Court reversed a court of appeals decision to the effect that such video testimony violated the defendant's right to confrontation.

5

¶15    The Supreme Court observed that the primary purpose of the Confrontation Clause is to "ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding." *Craig*, 497 U.S. at 845, 110 S. Ct. at 3163. As this Court observed in *Stock*, "[t]he elements of confrontation include physical presence of the witness, testimony under oath, cross-examination of the witness, and observation of the witness's demeanor by the trier of fact." *Stock*, ¶ 23, *citing Craig*, 497 U.S. at 845-46, 110 S. Ct. at 3163. While setting forth the important purposes of the confrontation clause, however, the Supreme Court declared that it had "never held . . . that the Confrontation Clause guarantees criminal defendants the *absolute* right to a face-to-face meeting with witnesses against them at trial." *Craig*, 497 U.S. at 844, 110 S. Ct. at 3163. (Emphasis in original.)

¶16    It is well-established that in some respects the Montana Constitution provides greater protection than the United States Constitution. For example, *see Gryczan v. State*, 283 Mont. 433, 942 P.2d 112 (1997) addressing Article II, Section 10 of the Montana Constitution (right to privacy) and *Northern Plains Res. Council, Inc. v. Mont. Bd. of Land Comm'rs*, 2012 MT 234, 366 Mont. 399, 288 P.3d 169, addressing Article IX, Section 1 of the Montana Constitution (clean and healthful environment). As noted, Article II, Section 24 of the Montana Constitution specifically guarantees an accused's right "to meet the witnesses against him face to face." In reference to Montana's confrontation clause, we stated in *State v. Clark*, 1998 MT 221, ¶¶ 20-22, 290 Mont. 479, 964 P.2d 766, that "we [are] not bound by a United States Supreme Court decision interpreting the Sixth Amendment Confrontation Clause in the context of hearsay evidence 'as we may interpret our state constitution to

6

guarantee greater rights than those guaranteed by the federal constitution.'" Nonetheless, in addressing Article II, Section 24 of the Montana Constitution in *Stock*, we observed that "we have never interpreted that greater protection to entitle a criminal defendant to *literal* face-to-face confrontation with all witnesses." (Emphasis in original.) *Stock*, ¶ 28.

¶17 On appeal to the District Court, Duane relied heavily upon *Bonamarte v. Bonamarte*, 263 Mont. 170, 866 P.2d 1132 (1994), in which we held that the district court's decision to allow one of the parties to a dissolution proceeding to testify via telephone, over the other party's objection, was reversible error. Applying M. R. Evid. 611(e),[1] we identified six important policies for requiring a witness to testify personally at trial including that personal testimony allowed the trier of fact to evaluate a witness's credibility and demeanor, impressed upon a witness the seriousness of the occasion, and assured that the witness was not being coached or influenced. *Bonamarte*, 263 Mont. at 174, 866 P.2d at 1134. The *Bonamarte* Court also expressly noted the difficulty of conducting cross-examination by telephone and that "it was impossible for the court to make a determination as to the relative credibility of the party-witnesses because it did not have an opportunity to observe [their] testimony" or their "demeanor during testimony." *Bonamarte*, 263 Mont. at 175-76, 866 P.2d at 1135.

¶18 In affirming Duane's Municipal Court conviction, the District Court concluded that the confrontation and cross-examination concerns raised in *Bonamarte* were properly

---

[1] M. R. Evid. 611(e) provides: "Except as otherwise provided by constitution, statute, these rules, or other rules applicable to the courts of this state, at the trial of an action, a witness can be heard only in the presence and subject to the examination of all the parties to the action, if they choose to attend and examine."

addressed and satisfied by the Municipal Court when it allowed Sjolin to testify via Skype. The court reviewed several Montana "confrontation clause" cases in which this Court determined that given the unique circumstances of those cases, the defendants' constitutional right to confrontation was not violated. *See State v. Hall*, 1999 MT 297, 297 Mont. 111, 991 P.2d 929; *State v. Davis*, 253 Mont. 50, 830 P.2d 1309 (1992); and *State v. Scott*, 257 Mont. 454, 850 P.2d 286 (1993). The District Court also addressed M. R. Evid. 611(e) as applied in *Bonamarte*, but observed that the rule generally applies to civil actions and not criminal cases. Duane argues on appeal that the District Court erred in upholding his Municipal Court conviction, and that both his constitutional right to confrontation and his right to confrontation under Rule 611(e) were violated.

¶19 The record reveals that during the Municipal Court trial, the electronic connection was made without difficulty. The court administered the oath and confirmed that Sjolin was alone in the room from which she was testifying, and that she could hear and see the court and the jury could hear and see her. Subsequently, counsel for the City and Duane conducted direct and cross-examination of the doctor in real time without complication or technical difficulty. Based upon the in-person testimony of other witnesses and Sjolin's Skype testimony, the jury found Duane guilty.

¶20 We conclude that the Municipal Court did not abuse its discretion in allowing Sjolin to testify via Skype, and the District Court did not err in upholding that decision. The concerns underlying our decision in *Bonamarte* with respect to cross-examination by telephone simply do not exist in this case and with this technology. While telephone testimony presents the listener with a disembodied voice and no clue as to the demeanor of

8

the witness, Skype allows the court and jury to observe and hear the testimony of the witness firsthand. We conclude that our confrontation analysis in *Bonamarte* supports rather than precludes the use of Skype for witness testimony at trial.

¶21 While the physical presence of a witness in the courtroom is preferred, the City made a compelling showing that requiring Sjolin to travel to Missoula from California to testify live at three separate trials would impose a prohibitive expense on the City and a significant burden on Sjolin. Allowing Skype testimony under these circumstances was not error because all of the hallmarks of confrontation addressed in *Craig* and *Stock* were fully met: the proceeding was adversary, the witness was present in real time and under oath, and the jury was able to observe her demeanor and hear her testimony as she was subject to direct and cross-examination. Duane's constitutional right to confrontation was not violated.

¶22 *Did the District Court err in concluding the M. R. Evid. 611(e) did not apply to criminal proceedings?*

¶23 In its order affirming Duane's Municipal Court conviction, the District Court concluded that the policy considerations underlying M. R. Evid. 611(e), which provides in pertinent part that except as otherwise provided by the Constitution or statues and rules applicable to the courts of this state, "at the trial of an action, a witness can be heard only in the presence and subject to examination of all the parties to the action," were satisfied by the Skype testimony of Dr. Sjolin. We conclude the court was correct because the witness was in the live presence of the parties and subject to examination. Duane argues, however, that the court erroneously concluded that Rule 611(e) "is generally applicable to civil actions and not criminal cases." Duane asserts this conclusion is in error. We agree.

9

¶24 Section 46-16-201, MCA, provides in its entirety: "The Montana Rules of Evidence and the statutory rules of evidence in civil actions are applicable also to criminal actions, except as otherwise provided." The District Court was therefore mistaken in concluding that M. R. Evid. 611(e) was not applicable to his case. However, the court's error is of no moment as we have concluded that Rule 611(e) was satisfied by the Skype testimony offered by Dr. Sjolin; therefore, the court's error was harmless. We disregard any errors that do not affect the substantial rights of a party. Section 46-20-701(2), MCA.

## CONCLUSION

¶25 The preferred method of introducing the testimony of a witness at trial is by way of the personal presence of the witness in the courtroom. However, where a moving party makes an adequate showing on the record that the personal presence of the witness is impossible or impracticable to secure due to considerations of distance or expense, a court may permit the testimony of the witness to be introduced via Skype or a substantially similar live 2-way video/audio conferencing program that satisfies the hallmarks of confrontation as herein set forth. Under the circumstances presented here, the District Court did not abuse its discretion in permitting the Skype testimony.

¶26 Affirmed.

/S/ PATRICIA COTTER

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JIM RICE

10

Chief Justice Mike McGrath, concurring.

¶27    "It's a great invention, but who would ever want to use it."

¶28    The world of telecommunications has come a long way since President Rutherford B. Hayes allegedly uttered these words about the telephone.  Moreover, in the years since the adoption of the 1972 Montana Constitution, or even our 1994 decision in *Bonamarte*, advances in communications technology that have far outstripped the average person's ability to foresee or even imagine have occurred at an astonishing pace—technology that the Framers of our Constitution could not have anticipated.

¶29    Skype and similar services now allow real-time, face-to-face communication with another person virtually anywhere in the world.  Usage of these communication tools has become commonplace in our society.  Certainly modern juries will be comfortable with their use in the courtroom.  As the Court notes, all of the hallmarks of confrontation clause concerns were satisfied with the use of Skype in this case.

¶30    I would hold that the "face to face" requirement of Article II, Section 24 of the Montana Constitution, and the "only in the presence" requirement of M. R. Evid. 611(e) are fully satisfied by the use of these real-time, face-to-face communication devices and services.

¶31    I concur.

/S/ MIKE McGRATH