FILED

04/02/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0043

DA 22-0043

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 71N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

CORY ANN RUCKER,

      Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
                   In and For the County of Lewis and Clark, Cause No. ADC-2020-277
                   Honorable Mike Menahan, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Rufus I. Peace, Peace Law Group, LLC, Jacksonville, Florida

      For Appellee:

      Austin Knudsen, Montana Attorney General, Michael P. Dougherty,
      Assistant Attorney General, Helena, Montana

      Kevin Downs, Lewis and Clark County Attorney, Katie Jerstad, John
      Nesbitt, Deputy County Attorneys, Helena, Montana

Submitted on Briefs:  January 24, 2024

Decided:  April 2, 2024

Filed:

_____
                       Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1	Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2	A jury convicted Cory Ann Rucker of exploitation of an older person and theft of identity. Rucker appeals only the latter conviction, asserting the First Judicial District Court, Lewis and Clark County, erred when it permitted the State to add a witness on the first day of trial and allowed the witness to testify by two-way audio-video. We affirm.

¶3	Lewis and Clark County initially charged Rucker by Information with exploitation of an older person, A.B., a felony in violation of § 45-6-333(1)(a)(i), MCA,[1] or, alternatively, theft, a felony in violation of § 45-6-301(1)(c), MCA. In its affidavit, the State represented that Corporal Nathan Casey of the Helena Police Department was contacted by Adult Protective Services (APS) in January 2020 about the possible financial exploitation of A.B., Rucker's mother. Though A.B. had been living with her son Ward in Townsend, Rucker reported to the Broadwater County Sheriff's Office in October 2019 that A.B. was fearful of her other children. A.B. began living with Rucker in Helena shortly thereafter. Ward later reported to APS investigators that he reviewed one of A.B.'s bank statements from Opportunity Bank and noticed an unusually high level of spending for

_____

[1] All references to the MCA refer to the 2019 MCA.

2

A.B., including debit card withdrawals from casinos, even though A.B. was not known to gamble. An APS investigator interviewed A.B. with Rucker present on January 21, 2020. The investigator noted that she believed Rucker was "coaching" A.B. on certain responses and prompting her to agree that certain charges were legitimate. After Cpl. Casey obtained A.B.'s bank records, he discussed them with A.B. in February 2020, who appeared "shocked" to learn that over $17,000 had been withdrawn within the three months she was living with Rucker.

¶4 The State later amended its Information to include theft of identity, a felony in violation of § 45-6-332, MCA. In its affidavit, the State explained that Cpl. Casey discovered in a follow-up investigation that A.B. had a new Capital One credit card in her name that she did not apply for. The credit card application used Rucker's e-mail, phone number, and mailing address. Cpl. Casey noted the application date was January 22, 2020, the day after the APS investigator met with Rucker and A.B., and the ATM withdrawals from A.B.'s Opportunity Bank debit card had stopped.

¶5 On the morning of trial, the State notified the District Court that "it came to the State's attention during trial preparations last week that [the State] did not [] endorse [] a custodian of record for Capital One Bank. There is an application which was received through an investigative subpoena from Capital One that the State had intended to introduce." It referenced that the Friday before the Monday trial, the State filed a subpoena for "Capital One (USA), N.A., (Custodian of Records)." The State moved at trial to add a witness from Capital One who was not previously listed in the Information. It also

requested a pretrial ruling that the witness testify by two-way audio-video technology via Zoom, explaining that Capital One had a policy that barred its staff from traveling for testimony due to Covid-19. Over defense counsel's objection to both motions, the District Court permitted the testimony via Zoom for foundational purposes.

¶6 The State first called Mandy Allen, a representative of Opportunity Bank of Montana who oversees fraud, information, physical security, and cybersecurity at the bank. She testified that Opportunity Bank received a request for A.B.'s banking records from APS in January 2020, and she reviewed A.B.'s account activity for potential fraud. During Allen's testimony, the State admitted exhibits of A.B.'s bank statements from April 2019 to May 2020. Allen described that A.B.'s accounts prior to October 2019 had "minimal activity." In October 2019, Allen described a "substantial change" in the account transactions, noting "numerous ATM withdrawals at casinos."

¶7 A.B. testified at trial that Rucker "was stealing from [her]." A.B. stated that she did not use a credit card and had used "[v]ery few" in the past. When asked by the prosecution if Rucker ever discussed getting a credit card for her, A.B. "recall[ed] [Rucker] asking for one" but testified that she did not need it. She denied that she gave Rucker permission to use her information to apply for a credit card in her name.

¶8 During A.B.'s testimony, the State admitted a voluntary statement that A.B. had written and provided to the Broadwater County Sheriff's Office in May 2020. The statement was signed by A.B. and stated:

> On Friday May 22nd, 2020, I had my grandson run a credit report on me. We discovered a new credit card with Capital One had opened on 1/21/2020.

4

I did not authorize this nor did I know about it until today. There [is] $2569 charged on the account. I think that my daughter Cory Rucker . . . opened the account [without] my permission or knowledge.

¶9 Cpl. Casey testified that he served an investigative subpoena on Opportunity Bank and reviewed A.B.'s bank records. He testified that during the time A.B. lived with Rucker in Helena, A.B.'s bank account balance decreased from around $27,000 to $7,000. During that time, Cpl. Casey noted ninety-three ATM withdrawals, totaling $11,400. He stated that there were around $400 in fees associated with the ATM withdrawals, and "the vast majority were in Helena at addresses either adjacent to or within a casino."

¶10 Tabitha Trujillo testified that she gave Rucker rides to Roundup, Montana, in May 2020. Trujillo stated that Rucker was living in Roundup for a short period of time with A.B., her daughter, and another man, and Rucker decided to move A.B. back to Helena. She and Rucker went to Billings to rent a U-Haul truck to use during the move. After the truck rental company asked for Rucker's driver's license and information, Rucker left and asked Trujillo to make a cash withdrawal for her to rent a vehicle from Enterprise instead. Trujillo stated that Rucker "had a credit card under her mom's name that . . . they applied for when her mom was with her." Trujillo said that she declined Rucker's request to withdraw money for her.

¶11 Jeremy Bloxson, a fraud investigator for Capital One, testified via Zoom from Chicago, Illinois. Bloxson stated that he responds to investigative subpoenas from law enforcement and is familiar with the records of Capital One that are kept in the regular course of business. During Bloxson's testimony, the State admitted Exhibits 10, 11, and

12. Exhibit 10 consisted of information collected from A.B.'s online credit card application, including her name, date of birth, Social Security number, e-mail address, phone number, and physical address. Exhibit 11 consisted of monthly credit card statements for A.B.'s account from March to May 2020. Exhibit 12 was a letter sent from Capital One to A.B. in May 2021 informing her that Capital One determined the account in dispute to be fraud. On cross-examination, Bloxson testified that he could not be sure who submitted the application for the credit card because it was done online.

¶12 Following Bloxson's testimony, the State recalled Cpl. Casey as a witness. Cpl. Casey testified that he issued an investigative subpoena to Capital One and received the documents in State's Exhibits 10 and 11. He stated that upon review of the credit card application, he noticed that the application used A.B.'s Social Security number but listed Rucker's address, e-mail address, and phone number.

¶13 "This Court exercises plenary review of constitutional questions and applies de novo review to a district court's constitutional interpretations of the Sixth Amendment of the United States Constitution and Article II, Section 24 of the Montana Constitution." *State v. Mercier*, 2021 MT 12, ¶ 11, 403 Mont. 34, 479 P.3d 967 (citing *State v. Stock*, 2011 MT 131, ¶ 16, 361 Mont. 1, 256 P.3d 899). "All other legal conclusions of law are evaluated for correctness subject to de novo review." *Mercier*, ¶ 12 (citing *City of Missoula v. Duane*, 2015 MT 232, ¶ 10, 380 Mont. 290, 355 P.3d 729). "Evidentiary rulings are reviewed for an abuse of discretion." *Mercier*, ¶ 12 (citing *Duane*, ¶ 10). A court abuses its discretion if it acts arbitrarily and without the employment of conscientious judgment or in a manner

6

that exceeds the bounds of reason, resulting in substantial injustice. *Mercier*, ¶ 12 (citing *Stock*, ¶ 17).

¶14    Section 46-15-322(1)(a), MCA, states: "Upon request, the prosecutor shall make available to the defendant for examination and reproduction the following material and information within the prosecutor's possession or control: (a) the names, addresses, and statements of all persons whom the prosecutor may call as witnesses in the case in chief[.]" Rucker argues that the State's failure to disclose Bloxson as a witness prior to trial violated its duties under § 46-15-322, MCA, and Rucker's right to due process. The only tangible evidence upon which testimony could be given for the identity theft charge, according to Rucker, were the credit card application, credit card statements, and the letter from Capital One to A.B., which could be admitted only after the foundation was laid by the undisclosed Capital One witness. Therefore, Rucker asserts, the State knew or should have known about the need for a Capital One representative to establish the State's case and should have sought out such a representative prior to the Friday before trial.

¶15    The State responds that Rucker fails to show prejudice from the District Court's decision permitting the State to add Bloxson as a witness. The State asserts that it did not violate § 46-15-322, MCA, because Rucker was timely provided with the Capital One documents that Cpl. Casey received pursuant to the investigative subpoena, and at the time the State provided these documents, it did not know the name of the Capital One representative it would call to testify at trial. Assuming there was error, the State asserts

that it was inadvertent and did not prejudice Rucker because Bloxson's testimony was foundational and Rucker failed to request a continuance.

¶16 "A cause may not be reversed by reason of any error committed by the trial court against the convicted person unless the record shows that the error was prejudicial." Section 46-20-701(1), MCA. "Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Section 46-20-701(2), MCA.

¶17 Rucker has not shown on appeal that the trial court's decision to allow the State to call Bloxson as a witness at trial prejudiced her defense. Bloxson's testimony related solely to laying a foundation for the State's Exhibits 10, 11, and 12, which Rucker had in her possession long before. *See State v. Olsen*, 152 Mont. 1, 11, 445 P.2d 926, 932 (1968) (affirming the lower court's decision to allow the testimony of a witness not previously named in the Information where "[t]he direct examination of the witness [] related solely to laying a foundation for the exhibits which were introduced"). She does not claim the prosecutor's failure to list a Capital One representative on the Information was anything other than inadvertent or that she was surprised by the late witness. *See State v. Johnston*, 140 Mont. 111, 114, 367 P.2d 891, 891-92 (1962) (holding that defendants did not suffer prejudice by the county attorney's inadvertent failure to endorse the name of a witness on the Information where defendants did not show they were "surprised or unable to meet the testimony given by the witness."). The District Court did not abuse its discretion in approving the State's late request to call Bloxson as a witness.

¶18 Rucker next argues that the District Court abused its discretion by allowing Bloxson to testify via Zoom, which violated Rucker's right to confront witnesses against her under the Sixth Amendment to the United States Constitution and Article II, Section 24 of the Montana Constitution. Rucker asserts that this error was not harmless because without Bloxson's testimony, the State could not have admitted the Capital One documents and could not, therefore, provide any other evidence in support of the elements of theft of identity.

¶19 The State responds that this evidence was nontestimonial and therefore does not implicate the Confrontation Clause. It further asserts that the Capital One documents were business records and Bloxson was merely laying the foundation for these documents to be admitted. Assuming there was error, the State argues it was harmless because the testimony of A.B., Trujillo, and Cpl. Casey presented cumulative evidence of Rucker's guilt as to the identity theft charge.

¶20 The Confrontation Clause of the Sixth Amendment of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" The Montana Constitution provides that, "[i]n all criminal prosecutions the accused shall have the right . . . to meet the witnesses against him face to face[.]" Mont. Const. art. II, § 24.

¶21 "A constitutional deprivation of the defendant's confrontation right is a trial error and is subject to harmless error review." *Mercier*, ¶ 31 (citation omitted). The State bears the burden of proving beyond a reasonable doubt that the error was harmless. *Mercier*,

¶ 31 (citation omitted). We employ the "cumulative evidence" test, which "looks not to the quantitative effect of other admissible evidence, but rather to whether the fact-finder was presented with admissible evidence that proved the same facts as the tainted evidence proved." *State v. Van Kirk*, 2001 MT 184, ¶ 43, 306 Mont. 215, 32 P.3d 735.

¶22 Section 45-6-332(1), MCA, provides:

> A person commits the offense of theft of identity if the person purposely or knowingly obtains personal identifying information of another person and uses that information for any unlawful purpose, including to obtain or attempt to obtain credit, goods, services, financial information, or medical information in the name of the other person without the consent of the other person.

"[P]ersonal identifying information includes but is not limited to the name, date of birth, address, telephone number, driver's license number, Social Security number . . . financial institution account number, credit card number, or similar identifying information relating to a person." Section 45-6-332(3), MCA. To satisfy the elements of theft of identity, the State needed to prove that Rucker used A.B.'s personal identifying information for any unlawful purpose, including to obtain or attempt to obtain credit, goods, or services. The State called Bloxson to lay foundation for evidence that would prove these elements.

¶23 That Bloxson was a foundational witness does not vitiate any confrontation violation. We rejected this argument in *Mercier*, noting that, "nowhere in the text of the Confrontation Clause is there language limiting the type of testimonial evidence to which the right to physical confrontation applies." *Mercier*, ¶ 27 (citing U.S. Const. amend. VI; Mont. Const. art. II, § 24; *State v. Clark*, 1998 MT 221, ¶ 22, 290 Mont. 479, 964 P.2d 766).

¶24 Even if the court erred by permitting Bloxson to testify via Zoom, however, we conclude the error was harmless. A.B. stated in a written statement made at the Broadwater County Sheriff's Office, and confirmed in her testimony, that the Capital One card was issued without her permission or knowledge and used to incur over $2,500 in expenses. She stated that she believed Rucker was the person who opened this account. Additionally, Trujillo testified that Rucker told her she applied for a credit card in A.B.'s name and had it in her possession during the trip. Rucker also told Trujillo that she used the card for "emergencies." The testimony of A.B. and Trujillo provided cumulative admissible evidence to prove that Rucker applied for and obtained the credit card in A.B.'s name without her permission. The State has carried its burden of showing that any Confrontation Clause violation was harmless beyond a reasonable doubt as to the theft of identity conviction.

¶25 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The judgment is affirmed.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE