# Syllabus

Chief Justice:
Bridget M. McCormack

Chief Justice Pro Tem:
David F. Viviano

Justices:
Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh

Reporter of Decisions:
Kathryn L. Loomis

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

PEOPLE v JEMISON

Docket No. 157812. Argued March 5, 2020 (Calendar No. 3). Decided June 22, 2020.

Arthur Jemison was convicted following a jury trial in the Wayne Circuit Court of first-degree criminal sexual conduct, MCL 750.520b, for a sexual assault that occurred in 1996. The victim underwent a forensic examination in 1996, and evidence was collected for a rape kit at that time. But the rape kit was not analyzed until 2015. In 2015, samples from the kit were sent to a laboratory in Utah for testing and analysis. A forensic analyst at the lab, Derek Cutler, concluded that a vaginal swab from the kit contained the DNA of at least one male donor. The Utah lab forwarded its report to the Michigan State Police (MSP) Forensic Science Division, where the sample was compared to DNA stored in a database. The MSP determined that there was an association between Jemison's DNA and the DNA of the male donor identified by the Utah lab as a contributor to the vaginal swab. Before trial, the prosecution moved to allow Cutler to testify via two-way, interactive video. Jemison objected, but the court, Antonio Viviano, J., granted the motion. At trial, Jemison renewed his objection before a new judge, but the trial court, Dalton A. Roberson, J., allowed the video testimony over the objection. Jemison appealed his conviction, arguing, in part, that his right of confrontation under the federal and state Constitutions was denied when the trial court allowed Cutler to testify via two-way, interactive video. In an unpublished per curiam opinion issued on April 12, 2018 (Docket No. 334024), the Court of Appeals, SAWYER, P.J., and HOEKSTRA, J. (MURRAY, J., concurring), concluded that Jemison's right of confrontation was adequately protected when Cutler testified via video because the video testimony allowed Jemison and the jury to observe the witness's responses and reactions in real time and Jemison was able to cross-examine the witness. Although the Court of Appeals held that the trial court abused its discretion when it allowed the video testimony over Jemison's objection in violation of MCR 6.006(C), it concluded that the error was harmless. The Supreme Court granted Jemison's application for leave to appeal. 503 Mich 936 (2019).

In a unanimous opinion by Chief Justice MCCORMACK, the Supreme Court *held*:

The Sixth Amendment of the United States Constitution and Article I, § 20 of the Michigan Constitution guarantee criminal defendants the right to confront the witnesses against them. In *Ohio v Roberts*, 448 US 56 (1980), the United States Supreme Court held that the right of confrontation was satisfied even if a hearsay declarant was not present at trial for cross-examination as long as the statement bore adequate "indicia of reliability." The Court later held

in *Maryland v Craig*, 497 US 836 (1990), that a defendant's right to confront a child witness may be satisfied absent a face-to-face confrontation when necessary to advance an important public-policy consideration and when the evidence is sufficiently reliable. However, in *Crawford v Washington*, 541 US 36 (2004), the Court overruled *Roberts* and rejected its open-ended balancing approach. The Court held that the right of confrontation requires face-to-face confrontation and is absolute for all testimonial evidence unless a witness is unavailable and the defendant had a prior opportunity for cross-examination. The United States Supreme Court did not overrule *Craig* with its decision in *Crawford*, but it cast its vitality into doubt by turning away from the reliability-balancing approach. The Court of Appeals relied on *Craig* when it concluded that the forensic analyst's expert testimony should not raise the same confrontation-right concerns as the testimony of a fact witness. The United States Supreme Court disagrees, and has held that expert witnesses called by the prosecution are witnesses against the defendant and should be treated as such for purposes of protecting a defendant's right of confrontation. The Court of Appeals also determined that cost-savings was a sufficient reason to extend *Craig*, but expense is not a sufficient justification to avoid face-to-face confrontation. Such a rule would potentially allow the prosecution to deprive a defendant of confrontation rights by, for instance, using out-of-state analysts to save money and then relying on cost-savings as a justification for not providing face-to-face testimony. *Craig* should be applied only to the specific facts it decided: a child victim may testify against the accused by means of one-way video testimony (or similar method) when the trial court has determined, consistently with statutory authorization, that such measures are necessary because the child requires special protection. *Craig* was not controlling here because the witness was neither a victim nor a child. Instead, *Crawford* was controlling, and the trial court denied Jemison's right of confrontation when it allowed the video testimony over his objection because the forensic analyst was available to testify and Jemison had not had a prior opportunity to cross-examine him.

Judgment of the Court of Appeals reversed; case remanded to the Court of Appeals for further proceedings.

Justice VIVIANO did not participate due to a familial relationship with a circuit court judge involved in this case.

©2020 State of Michigan

# OPINION

Chief Justice:
Bridget M. McCormack

Chief Justice Pro Tem:
David F. Viviano

Justices:
Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh

FILED June 22, 2020

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v                                                                              No. 157812

ARTHUR LAROME JEMISON,

Defendant-Appellant.

BEFORE THE ENTIRE BENCH (except VIVIANO, J.)

MCCORMACK, C.J.

The Sixth Amendment of the United States Constitution and Article I, § 20 of the Michigan Constitution guarantee criminal defendants the right to confront the witnesses against them. In this case, we consider whether a forensic analyst's two-way, interactive video testimony violated the defendant's Confrontation Clause rights.

The Court of Appeals held that the video testimony satisfied the constitutional requirements of face-to-face confrontation. But the Court relied only on precedent that predated the United States Supreme Court's decision in *Crawford v Washington*, 541 US

36; 124 S Ct 1354; 158 L Ed 2d 177 (2004), which transformed the Court's approach to confrontation rights. See *People v Pesquera*, 244 Mich App 305, 309; 625 NW2d 407 (2001), citing *Maryland v Craig*, 497 US 836, 845-846, 851; 110 S Ct 3157; 111 L Ed 2d 666 (1990) (holding that the Confrontation Clause did not categorically prohibit child witnesses from testifying outside the defendant's physical presence by one-way closed circuit television where reliability was otherwise supported).

For almost 25 years before *Crawford*, reliability was the touchstone of the Court's Confrontation Clause doctrine. In *Ohio v Roberts*, 448 US 56, 66; 100 S Ct 2531; 65 L Ed 2d 597 (1980), the Court held that the Confrontation Clause is satisfied even if a hearsay declarant is not present for cross-examination at trial as long as the statement bears adequate "indicia of reliability." Citing *Roberts*, the Court held in *Craig* that a defendant's right to confront a child witness may be satisfied absent a face-to-face encounter when necessary to advance an important public policy and when the testimony is reliable enough. *Craig*, 497 US at 850, citing *Roberts*, 448 US at 64. But in *Crawford*, the Court overruled *Roberts* and shifted from a reliability focus to a bright-line rule requiring a face-to-face encounter for testimonial evidence. *Crawford*, 541 US at 61-63, 68-69.

*Crawford* did not specifically overrule *Craig*, but it took out its legs. To reconcile *Craig* and *Crawford*, we read *Craig*'s holding according to its narrow facts.[1]

*Crawford* requires face-to-face cross-examination for testimonial evidence unless a witness is unavailable and the defendant had a prior opportunity for cross-examination.

---

[1] In *Craig*, the Court held that in child abuse cases, as long as a trial court made a case-specific showing of necessity that a child witness needs special protection, as required by a Maryland statute, the Confrontation Clause did not prohibit the court from allowing the child witness to testify using one-way video. *Craig*, 497 US at 856, 860.

2

*Crawford*, 541 US at 68. Here, admitting the prosecution witness's video testimony over the defendant's objection violated the defendant's state and federal constitutional rights to confrontation. We reverse the judgment of the Court of Appeals and remand the case to that Court for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

In September 1996, the victim was raped and robbed while waiting in a parked car for an acquaintance. Later that day, she filed a police report and went to a hospital for a forensic examination and the collection of evidence known as a "rape kit." She did not know her assailant's identity.

The rape kit was not analyzed until 2015.[2] The samples were sent to Sorensen Laboratory in Utah for serological processing and further DNA testing. Sorensen analyst Derek Cutler concluded that the vaginal swab from the rape kit contained a mixture of DNA profiles from at least two contributors, at least one of which was male and suitable for comparison. Sorenson forwarded the report to the Michigan State Police (MSP) Forensic Science Division, which analyzed and compared the sample to DNA data stored in the Combined DNA Index System (CODIS) database. The MSP identified an association between the defendant's DNA and the male donor identified by the Sorensen report. The defendant was charged with two counts of first-degree criminal sexual conduct, MCL 750.520b.

Over the defendant's objection, the circuit court granted the prosecution's pretrial motion to allow Cutler to testify by video. Before a different judge who presided over the

[2] The 1996 rape kit remained in the Detroit Police Department's property section until it was discovered in 2014 and tested in 2015.

3

trial, the defendant renewed his objection to Cutler's video testimony. But the trial court allowed it.

Cutler testified that it is "normal within the scientific community to have multiple people do work on these [rape] kits" and acknowledged that he "did not actually see the rape kit." Instead, he "[went] off the notes that [we]re done by other serologists and technicians who are competent in their testing."[3] He analyzed those other serologists' notes and concluded that there were at least two contributors to the DNA on the vaginal swab—an unknown male donor and a second donor whose DNA was present at such a low level that it was not suitable for comparison. Catherine Maggert, the MSP analyst who used Cutler's report for her analysis, testified that when she compared that report's unknown male donor to the CODIS database, there was an association linking the defendant to the unknown male donor.

The jury convicted the defendant of one count of first-degree criminal sexual conduct and acquitted him of the other count. He was sentenced to serve 22 to 40 years in prison. He appealed, in part arguing that he was denied his right of confrontation when the trial court allowed Cutler's video testimony, rather than requiring his presence in the courtroom. The Court of Appeals affirmed. *People v Jemison*, unpublished per curiam opinion of the Court of Appeals, issued April 12, 2018 (Docket No. 334024). The panel relied on *Pesquera*, an opinion predating *Crawford*, in which the Court of Appeals held

---

[3] Upon learning that Cutler never saw the rape kit but had interpreted other analysts' notes, the defendant again objected to this specific part of Cutler's testimony, arguing that it was inadmissible hearsay. (The defendant apparently did not also object to his inability to confront the witnesses who had conducted the analysis.) The trial court overruled the objection, and the defendant did not appeal that ruling.

that a defendant's confrontation rights were adequately protected when a trial court allowed videotaped deposition testimony from child witnesses accusing the defendant of criminal sexual conduct. *Pesquera*, 244 Mich App at 309. *Pesquera* relied on *Craig* for this holding. Citing *Pesquera*, the panel stated that the Confrontation Clause requires the following:

> (1) a face-to-face-meeting of the defendant and the witnesses against him at trial; (2) the witnesses should be competent to testify and their testimony is to be given under oath or affirmation, thereby impressing upon them the seriousness of the matter; (3) the witnesses are subject to cross-examination; and (4) the trier of fact is afforded the opportunity to observe the witnesses' demeanor. [*Jemison*, unpub op at 5, citing *Pesquera*, 244 Mich App at 309, which in turn cited *Craig*, 497 US at 846, 851.]

Working within this analytic framework, the panel noted that although the defendant "was not able to confront the witness in the traditional sense" when the expert testified using two-way, interactive video, the defendant was able to "observe the expert's responses and reactions in real time and [the defendant] took advantage of the opportunity to do so through cross-examination." *Jemison*, unpub op at 6. The court further noted that "[t]he jury was able to observe the expert as he responded." *Id*. The panel concluded that "[b]ecause the testimony met three of the Confrontation Clause criteria, and the trial court appropriately dispensed with the face-to-face requirement, defendant's right to confrontation was not violated." *Id*.

The panel also held that the trial court abused its discretion by allowing the witness's two-way, interactive video testimony over the defendant's objection because MCR 6.006(C) requires the parties to consent to the use of videoconferencing technology for trial testimony, but it found that error harmless. *Id*. at 5, 7.

5

The defendant filed an application for leave to appeal in this Court. We granted it and asked the parties to address "whether permitting an expert witness to testify by two-way interactive video, over the defendant's objection, denied the defendant his constitutional right to confront witnesses and, if so, whether this error was harmless." *People v Jemison*, 503 Mich 936, 936-937 (2019).[4]

## II. STANDARD OF REVIEW

Whether a defendant was denied his right to confront a witness is a constitutional question that we review de novo. *People v Bruner*, 501 Mich 220, 226; 912 NW2d 514 (2018). When we review a question de novo, we review the legal issue independently without deference to the lower court. *Id*.

## III. ANALYSIS

The Sixth Amendment of the United States Constitution provides, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." See also Const 1963, art 1, § 20. Before *Crawford*, the United States Supreme Court's Confrontation Clause jurisprudence was built around the reliability of the challenged evidence. In *Roberts*, the Court held that the Confrontation Clause was not a barrier for admission if the challenged testimony bore adequate "indicia of

---

[4] The prosecution argues that the defendant waived appellate review of this issue by failing to object in writing when it notified the defendant that it intended to admit Cutler's written report into evidence under MCR 6.202. In other words, the prosecution argues that a defendant's failure to comply with a court rule which governs the admissibility of an expert's report waives his constitutional right to confront the witness who authored the report. Merits aside, because the prosecution did not raise this argument before the Court of Appeals, we decline to address it. See *People v Walker*, 504 Mich 267, 276 n 3; 934 NW2d 727 (2019), citing *People v McGraw*, 484 Mich 120, 131 n 36; 771 NW2d 655 (2009).

6

reliability." *Roberts*, 448 US at 66. *Crawford* overruled *Roberts* and transformed the Court's approach to the Confrontation Clause from a case-by-case reliability-balancing test to a categorical rule for protected evidence.

*Craig* was decided before *Crawford* and therefore under the *Roberts* reliability framework. In *Craig*, the Court held that a defendant's right to confront a child witness may be satisfied by one-way video testimony instead of a physical, face-to-face confrontation, if the testimony is reliable. *Craig*, 497 US at 850, citing *Roberts*, 448 US at 64. The Court identified four considerations that courts should weigh to determine reliability—physical presence, whether the testimony was taken under oath, the defendant's ability to cross-examine, and whether the jury could observe the witness's demeanor. See *Craig*, 497 US at 846. And having weighed those factors and determined that the testimony was reliable, the Court held that because the evidence was reliable, "protect[ing] a child witness from trauma that would be caused by testifying in the physical presence of the defendant, at least where such trauma would impair the child's ability to communicate," justified permitting the witness's one-way video testimony. *Id*. at 857.

Justice Scalia dissented. He rejected the majority's reliability-balancing test "because the Confrontation Clause does not guarantee reliable evidence; it guarantees specific trial procedures that were thought to *assure* reliable evidence, undeniably among which was 'face-to-face' confrontation." *Id*. at 862 (Scalia, J., dissenting). And he criticized the Court's balancing test as inconsistent with the constitutional text. *Id*. at 870 ("The Court today has applied 'interest-balancing' analysis where the text of the Constitution simply does not permit it.").

7

Fourteen years passed between *Craig* and *Crawford*, and things changed. In *Crawford*, Justice Scalia wrote for the majority and his dissent from *Craig* became the Court's view, transforming its approach to the Confrontation Clause. Concluding that *Roberts* had "replac[ed] categorical constitutional guarantees with open-ended balancing tests," *Crawford*, 541 US at 67-68, the Court shifted gears; balancing no longer had a role. Instead, the defendant's confrontation right is absolute for all "testimonial" evidence unless a witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Id*. at 68.

The Court emphasized the importance of face-to-face testimony to the confrontation right, citing historical examples that illustrated how face-to-face testimony was critical to its enforcement. *Id*. at 43-45 (describing, for example, how a trial court refused to call Sir Walter Raleigh's accuser to testify, over Raleigh's pleading, "Call my accuser before my face," which led to both Raleigh's death sentence and then to English law developing the confrontation right as an important limit on government abuses against criminal defendants) (citation omitted). The Court explained that a reliability-balancing test would not have "provid[ed] any meaningful protection" in these cases. *Id*. at 68. And so the Court restored face-to-face testimony as a fundamental element of the confrontation right. *Id*. at 57, quoting *Mattox v United States*, 156 US 237, 244; 15 S Ct 337; 39 L Ed 409 (1895); see also *California v Green*, 399 US 149, 157; 90 S Ct 1930; 26 L Ed 2d 489 (1970) (explaining that "it is this literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause").[5]

---

[5] While the Court's early confrontation jurisprudence included both the right to cross-examine and the right to have the witness brought to face the defendant, face-to-face

The reliability-balancing approach established by the Court in *Roberts* was the basis for its rule in *Craig* allowing public-policy considerations to override the need for face-to-face testimony if the evidence is reliable enough. *Craig*, 497 US at 850. When *Crawford* overruled *Roberts* and did away with reliability balancing, it put *Craig*'s reliability-focused rule into doubt. We are not the first court to notice. See *United States v Carter*, 907 F3d 1199, 1206 n 3 (CA 9, 2018) (recognizing that "[t]he vitality of *Craig* itself is questionable in light of the Supreme Court's later decision in *Crawford*"); see also *State v Thomas*, __ NM __; 2016-NMSC-024; 376 P3d 184, 193 (2016) (noting that "*Crawford* may call into question the prior holding in *Craig* to the extent that *Craig* relied on the reliability of the video testimony"). But the Supreme Court did not specifically overrule *Craig*, and, of course, we leave to that Court "the prerogative of overruling its own decisions." *Rodriguez de Quijas v Shearson/American Express, Inc*, 490 US 477, 484; 109 S Ct 1917; 104 L Ed 2d 526 (1989).

testimony has even deeper historical roots: it was a critical feature of ancient Roman court systems, while the cross-examination right was a seventeenth-century innovation. See Herrmann & Speer, *Facing the Accuser: Ancient and Medieval Precursors of the Confrontation Clause*, 34 Va J Int'l L 481 (1994); see also *Coy v Iowa*, 487 US 1012, 1015-1016; 108 S Ct 2798; 101 L Ed 2d 857 (1988) ("The Roman Governor Festus, discussing the proper treatment of his prisoner, Paul, stated: 'It is not the manner of the Romans to deliver any man up to die before the accused has met his accusers face to face, and has been given a chance to defend himself against the charges.' Acts 25:16.").

The Court previewed this aspect of its *Crawford* holding in 2002, when it refused to pass along to Congress a proposed amendment to the Federal Rules of Criminal Procedure that would have allowed a trial witness to give testimony by video. In an accompanying statement, Justice Scalia remarked that the proposed rule was "of dubious validity under the Confrontation Clause." Order Amending the Federal Rules of Criminal Procedure, 535 US 1159, 1159 (2002) (statement of Scalia, J.). As he put it, "Virtual confrontation might be sufficient to protect virtual constitutional rights; I doubt whether it is sufficient to protect real ones." *Id*. at 1160.

The Court of Appeals extended *Craig*'s rule here for two reasons. See *Jemison*, unpub op at 5-6. First, because Cutler was an expert witness, the panel believed that his testimony should not raise the same confrontation-right concerns as the testimony of a fact witness. *Id.* Put differently, the Court of Appeals reasoned that Cutler's *expert* testimony does not present the same credibility concerns as nonexpert witnesses, effectively placing him outside the confrontation right. The United States Supreme Court, however, disagrees: expert witnesses called by the prosecution are witnesses against the defendant. *Melendez-Diaz v Massachusetts*, 557 US 305, 313-314; 129 S Ct 2527; 174 L Ed 2d 314 (2009) ("The text of the [Sixth] Amendment contemplates two classes of witnesses—those against the defendant and those in his favor. The prosecution *must* produce the former; the defendant *may* call the latter. Contrary to respondent's assertion, there is not a third category of witnesses, helpful to the prosecution, but somehow immune from confrontation.").

Second, the Court of Appeals believed that cost-savings was a sufficient reason to extend *Craig*'s rule. *Jemison*, unpub op at 5. We disagree; expense is not a justification for a constitutional shortcut. This is especially true where the prosecution elects to use an out-of-state laboratory for its analysis. Such a rule would have perverse consequences: the prosecution could deprive a criminal defendant of confrontation rights by using out-of-state analysts to save money and then cite cost-savings as a justification for not providing face-to-face testimony.[6]

---

[6] Courts applying *Craig*'s rule have almost universally concluded that expense is not a sufficient reason for sacrificing face-to-face testimony. See, e.g., *State v Rogerson*, 855 NW2d 495 (Iowa, 2014) (the state's justification of distance, cost, and inefficiency could not overcome a defendant's confrontation rights); *Lipsitz v State*, 135 Nev 131; 442 P 3d 138 (2019) (it was necessary to use two-way video technology for a witness who was

We will apply *Craig* only to the specific facts it decided: a child victim may testify against the accused by means of one-way video (or a similar *Craig*-type process) when the trial court finds, consistently with statutory authorization and through a case-specific showing of necessity, that the child needs special protection. *Craig*, 497 US at 860. The witness here was neither the victim nor a child; *Crawford* thus provides the applicable rule.

The Court of Appeals answered the wrong question when it held that "the trial court appropriately dispensed with the face-to-face requirement." *Jemison*, unpub op at 6.[7] As

---

medically unavailable due to being admitted to an out-of-state residential treatment center); *Thomas*, 376 P3d at 195 (a defendant's confrontation rights were violated when the trial court permitted an out-of-state forensic analyst to testify using two-way video in order to avoid inconveniencing the witness); *Bush v State*, 193 P3d 203, 214-216; 208 WY 108 (2008) (no confrontation violation when a witness testified over two-way video when his physician warned against traveling and he gave testimony after being sworn in by a district court judge). Only one state's highest court appears to have adopted a test allowing for two-way video testimony in response to impossibility or impracticality because of distance or expense. *Missoula v Duane*, 380 Mont 290; 2015 MT 232; 355 P3d 729, 731, 734 (2015). But the defendant was charged with a misdemeanor and the out-of-state witness would have had to travel for three separate trials, which the Montana Supreme Court found would have imposed a significant burden on the witness and a significant expense on the city. *Id*.

Even if we were to apply *Craig*'s rule, our result would be the same: mere convenience, efficiency, and cost-savings interests are not important enough public-policy considerations to dispense with a defendant's constitutional right to face-to-face confrontation.

[7] Perhaps because the defendant did not cite *Crawford* in his briefing in the Court of Appeals, or perhaps because this Court has cited *Craig* without the need to consider *Crawford*'s sea change to Confrontation Clause jurisprudence, see *People v Buie*, 491 Mich 294, 304-305; 817 NW2d 33 (2012), the Court of Appeals did not address *Crawford*. It cited only *Buie*, in which this Court quoted *Craig*. See *Jemison*, unpub op at 5, quoting *Buie*, 491 Mich at 304. While *Buie* was decided after *Crawford*, it does not appear that *Crawford* was raised in that case either; there was, in fact, little need for a Confrontation Clause analysis in *Buie* given that we held that the defendant through his counsel had waived his right to confrontation. *Buie*, 491 Mich at 317-318.

*Crawford* makes clear, for testimonial evidence, that requirement may be dispensed with only when the witness is unavailable and the defendant had a prior chance to cross-examine the witness.

The parties do not dispute that Cutler's evidence was testimonial.[8] And we agree—Cutler's evidence was, after all, *testimony*. See *Crawford*, 541 US at 51-52. The defendant had a right to face-to-face cross-examination; Cutler was available, and the defendant did not have a prior chance to cross-examine him. See *id*. The defendant's state and federal constitutional rights to confrontation were violated by the admission of Cutler's two-way, interactive video testimony.[9]

---

But had there been no waiver, *Crawford* would have controlled. *Craig*'s language that "the face-to-face confrontation requirement is not absolute" and that the preference for face-to-face confrontations "must occasionally give way to considerations of public policy and the necessities of the case," *Craig*, 497 US at 849-850, citing *Mattox*, 156 US at 243; see also Jemison, unpub op at 5 (quotation marks and citations omitted), envisions the possibility of open-ended exceptions to the confrontation requirement that has since been rejected in *Crawford*. See *Crawford*, 541 US at 54 ("The text of the Sixth Amendment does not suggest any open-ended exceptions from the confrontation requirement to be developed by the courts.").

[8] In a footnote in its supplemental brief, the prosecution suggests that Cutler's testimony could be considered to be nontestimonial because of the plurality decision in *Williams v Illinois*, 567 US 50; 132 S Ct 2221; 183 L Ed 2d 89 (2012). This footnote notwithstanding, the prosecution has consistently conceded that Cutler's *testimony* is *testimonial*. But even if it had not so conceded, we are not persuaded by the prosecution's alternative argument presented in the footnote. *Williams* decided whether out-of-court statements made solely to explain the assumptions used to form an expert opinion were beyond the consideration of the Confrontation Clause. *Id*. at 58 (opinion of Alito, J.). Cutler testified, just not face-to-face.

[9] We agree with the Court of Appeals that the trial court's decision to allow the two-way, interactive video testimony also violated MCR 6.006(C). This Court has never addressed whether a violation of MCR 6.006(C) can be harmless, and if so, the appropriate standard to apply to determine whether it is harmless. See, e.g., *Buie*, 491 Mich at 320 (finding no violation of MCR 6.006(C)). The Court of Appeals appeared to treat the MCR 6.006(C)

## IV. CONCLUSION

In allowing this witness's two-way, interactive video testimony over the defendant's objection, the trial court violated the defendant's Confrontation Clause rights. We reverse the judgment of the Court of Appeals and remand to that Court for further proceedings consistent with this opinion, including determining whether that violation was harmless beyond a reasonable doubt. *Delaware v Van Arsdell*, 475 US 673, 684; 106 S Ct 1431; 89 L Ed 2d 674 (1986).

> Bridget M. McCormack
> Stephen J. Markman
> Brian K. Zahra
> Richard H. Bernstein
> Elizabeth T. Clement
> Megan K. Cavanagh

VIVIANO, J., did not participate due to a familial relationship with a circuit court judge involved in this case.

---

error as interchangeable with a Confrontation Clause violation and reviewed it for whether it was harmless beyond a reasonable doubt. We vacate its analysis on that point. On remand, the Court of Appeals should also consider (1) whether the violation of MCR 6.006(C) is susceptible to harmless-error review; (2) if so, what standard applies in determining whether the error was harmless; and (3) whether the error was harmless in this case.